## HUNT *v.* DAVIS.

### Opinion delivered February 27, 1911.

1. SALES OF CHATTELS—RESCISSION.—Equity has jurisdiction to annul a contract for the exchange of stock in two corporations which was procured by the false and fraudulent representations of one of the parties and to compel the restoration to the other party of the stock which he had exchanged. (Page 47.)

2. SAME—FRAUDULENT REPRESENTATIONS.—To vitiate an exchange of corporate stock, the fraudulent acts and false representations must be of such a nature as to constitute a fraud that is cognizable in law. (Page 47.)

3. SAME—RESCISSION.—Each party to a contract must act with care and diligence and seek the means of information relative to the subject-matter of sale that are open to both alike. (Page 47.)

4. SAME—RESCISSION FOR FRAUD.—In order to charge a seller with fraud, it must appear that he deceived the buyer relative to some matter material to the contract, either by statements known to be false or by acts, conduct or representations which suppress the truth and induce in the buyer a false impression. (Page 48.)

5. SAME—WHEN REPRESENTATIONS FRAUDULENT.—Representations, to be fraudulent in law, must be material, and must be made by one who either knows them to be false or else, not knowing, asserts them to be true of his personal knowledge, and made with intent to have the other party act upon them to his injury, and such must be their effect. (Page 48.)

6. SAME—FRAUDULENT REPRESENTATION.—Although a buyer must act with prudence in seeking the available means of ascertaining the truth, yet if the seller, having peculiar knowledge of the matter, by misrepresentation or artifice induces the buyer to rely upon his false statement, he cannot be heard to say that the buyer could have ascertained the truth. (Page 48.)

7. SAME—FRAUDULENT REPRESENTATION—VALUE OF STOCK.—False statements made of material facts relating to the property or conditions of a corporation which necessarily affect the value of its stock are not mere expressions of opinion upon which a purchaser of such stock

has no right to rely, but constitute fraud if thereby one is .induced to buy such stock. (Page 48.)

8. SAME—FRAUD IN EXCHANGE OF BANK STOCK.—Defendant, who was a director in a bank, exchanged 124 shares of its stock for other stock owned by plaintiff, representing that the bank had declared a dividend of 15 per cent. in the previous year and would declare as large a dividend in the current year, and that the bank had only one bad debt. The bank had, in fact, been insolvent for a year; the 15 per cent. dividend was not earned, and was paid by issuing stock. Of the shares sold 37 were dividend stock so wrongfully issued, and of the remainder only 30 per cent. were paid up. The bank failed in a few days, having many bad debts. *Held* that defendant's representations were fraudulent, and that the sale should be rescinded. (Page 49.)

Appeal from Johnson Circuit Court; *Hugh Basham,* Judge; affirmed.

*McKennon* and *Sellers & Sellers,* for apellants.

An officer of a corporation selling his individual stock acts solely in his private capacity, and is bound only by the rules applicable to vendors of personal property. Hence the inquiry in this case is whether there were false and fraudulent representations with reference to material matters affecting the value of the stock transferred, unaffected by appellant's official connection with the bank. 53 N. J. L. 656; 53 L. R. A. 769.

There being no fiduciary relation between an officer of a corporation selling stock owned by him and the purchaser, failure of the seller to disclose facts affecting the value of the stock does not constitute fraud, unless he makes false representations or induces the purchaser not to make inquiries. And, in case of false representation by the seller, in order to entitle the purchaser to rescind or recover damages, the representations must have been fraudulent in fact, and made with knowledge of its falsity, or recklessly and without any knowledge of its truth or falsity; and they must have been relied upon so as to constitute an inducement for the purchase. Clark & Marshall, Priv. Corp. § 616b; 15 Am. Rep. 245; 147 N. Y. 124; 49 Am. St. Rep. 651; 47 Ark. 165.

The plaintiff must not only show that he was misled by a false representation concerning a material fact, but also that defendant knew at the time that it was false, or that, being ignorant

of its truth or falsity, he asserted that it was true, with intent to deceive.  71 Ark. 308; 31 Ark. 170; 38 Ark. 340.

Puffing on the part of the vendor, or giving an opinion as to future profits or dividends, does not constitute fraud. 6 Ark. 517; 1 Ark. 41.  See also on the question of fraudulent representations, etc., 46 Ark. 250; 11 Ark. 66; 26 Ark. 30; 30 Ark. 686; 47 Ark. 164; 89 Ark. 315; 73 Ark. 572.

The burden is on the party alleging the fraud to establish all its elements by proof.  77 Ark. 355; 11 Ark. 378.

*Webb Covington* and *T. D. Crawford,* for appellee.

1.  Appellee testified that Hunt told him that the bank had made 15 per cent. the year previous and would pay a like sum the year the sale was made, and that there was but one bad paper that he knew of, and he thought that would come all right. Appellee knew nothing of the condition of the bank, and relied on that statement.  While appellant's testimony as to the transaction is somewhat different, the chancellor's finding is against him, and it can not be said that the preponderance is against appellee's testimony.  It is clear from the testimony that the bank was insolvent for a year before Hunt parted with his stock.

2.  Appellant, being an officer of the bank, was under the duty to exercise ordinary diligence to inform himself of its condition and business, and will be presumed to have known that which it was his duty to know.  97 Ky. 719; 79 Ia. 687.  When he made assertions as to the bank's financial condition, appellee had a right to rely upon them.

3.  The rule as to commendation or puffing applies only where the vendee has a full and fair opportunity to inspect the article to be sold and judge for himself.  45 Ark. 219.  It has no application to this case.  One may render himself liable for a false representation of the solvency of another, even though such representation was a mere expression of opinion, if the other elements of deceit are present.  1 Bigelow, Fraud, 481; 30 Ark. 362.

4.  Appellee testifies that he was induced to enter into the contract by the representations of appellant; and, even if he was in part influenced by other causes, the law will afford a remedy. 30 Ark. 373.

FRAUENTHAL, J.   This was an action instituted by R. S. Davis, the plaintiff below, to rescind a contract for the purchase and sale of certain shares of the capital stock of an incorporated bank into which it was alleged that he was induced to enter by reason of the fraud of defendant, W. R. Hunt.   It was alleged in the complaint that on May 8, 1909, the defendant sold to plaintiff 124 shares of the capital stock of the Bank of Coal Hill, for which he paid to him shares of stock in an incorporated telephone company of the value of $2,050 and $125 in money; and that defendant induced him to purchase said bank stock by falsely and fraudulently representing that the bank had declared and paid a dividend of 15 per cent. the preceding year and would pay a like sum the current year, and that of its assets there was only one bad debt due the bank, thereby indicating that the bank was in a good financial condition, when as a matter of fact the bank was insolvent and the stock worthless.   The plaintiff sought a cancellation of the sale of the stock and a recovery of the property he had paid therefor.   The defendant denied that he had made any false or fraudulent representations, but claimed that he sold said bank stock honestly and in good faith.   Upon the trial of the case the chancellor found that the contract of sale was entered into by reason of the false and fraudulent representations of the defendant, and made a detailed statement of his findings to that effect.   He cancelled the contract of sale, and decreed in favor of plaintiff a recovery of the property which he had paid in consideration of the bank stock.

It is well settled that a court exercising equity jurisdiction has the power to annul a contract for the sale of property which has been procured by the false and fraudulent representations of the vendor and to restore to the vendee the consideration given by him therefor.   Fraud vitiates such a contract, but the fraudulent acts and false representations complained of must be of such a nature as to constitute a fraud which is cognizable in law. Every false statement made by a vendor is not necessarily fraudulent in law, and the general rule is that the vendee must beware when he enters into a contract for the purchase of property.   The law requires that each party to such a contract should act with care and diligence, and seek the means of information relative to the subject-matter of the sale that are open to both alike, for the

law can not act as a guardian of either party and relieve him from the consequences of his own want of prudence. The principles on the subject of fraud which are applicable to contracts for the sale of property generally apply likewise to contracts for the sale of shares of stock. In order to charge the seller with fraud, it must be shown that he has made an active attempt to deceive the buyer relative to some matter material to the contract, either by statements which he knows to be false or by acts, conduct or representations which suppress the truth and induce in the buyer a false impression. Representations which are considered fraudulent in law must be of a nature that are material to the contract, and "must be made by one who either knows them to be false or else, not knowing, asserts them to be true, and made with the intent to have the other party act upon them to his injury, and such must be their effect." *Louisiana Molasses Co., Ltd., v. Fort Smith Gro. Co.,* 73 Ark. 542. If a representation is made by the seller which he knows to be false, it will constitute fraud, but a representation will also be fraudulent, even if he had no knowledge whatever, if it is made of a matter as truth of personal knowledge. *Cooper* v. *Schlesinger,* 111 U. S. 148; *Kountze* v. *Kennedy,* 147 N. Y. 124; *Cole* v. *Cassidy,* 138 Mass. 437.

Although a purchaser must act with prudence and diligence in seeking the available means of ascertaining the truth, yet if the seller, having peculiar knowledge of the matter, by any misrepresentation or artifice induces the buyer to rely on his false statement, then the seller will not be heard to say that the buyer could have ascertained the truth. The very representations relied upon may have caused the purchaser to forbear from making further inquiry. If the false representations are made with the intent to induce the other party to act thereon, ordinary prudence does not require the party to test the truth of such representations where they are within the knowledge of the party making them or where they are made to induce the other party to refrain from seeking further information. *Gammill* v. *Johnson,* 47 Ark. 335; *Graham* v. *Thompson,* 55 Ark. 296; *Stewart* v. *Fleming,* 96 Ark. 371; *Evatt* v. *Hudson,* 97 Ark. 265.

While, ordinarily, statements of the value of property are mere expressions of opinion upon which a purchaser is not en-

titled to rely, yet statements of fact which affect the value of the property, if false and made for the purpose of inducing the purchaser to rely thereon, are false representations which will constitute fraud in law. False statements made of material facts relating to the property or condition of a corporation which necessarily affect the value of the stock of such corporation are not mere expressions of opinion upon which a purchaser of such stock has no right to rely, but they are representations which will constitute fraud if by means of such misrepresentations the purchaser has been induced to buy such stock. Clark & Marshall, Private Corp. § 616 b; 20 Cyc. 60.

These principles of law, we think, are applicable to the state of case made by the evidence aduced upon the trial of this cause, and it is only necessary to determine whether or not this evidence is sufficient to prove that the contract for the sale of this bank stock was induced by false representations made by the defendant within the meaning of these principles.

It appears from the testimony that the Bank of Coal Hill was organized in March, 1902, with an authorized capital stock of $50,000, of which $47,750 was actually subscribed; and of this only 30 per cent., or $12,532.34, was actually paid in. The bank continued business until May 21, 1909, when it failed, and its affairs were placed in the hands of a receiver. At that time it was hopelessly insolvent, and owed a considerable sum in excess of its assets, so that its capital stock was entirely worthless. The chancellor found that this was the condition of the bank for at least one year prior to its suspension and failure, and we think that his finding is sustained by the evidence. The defendant was a stockholder and director of the bank at the date of its incorporation, and continued as such director until he sold his stock to the plaintiff, and was a member of the discount or loan board during a considerable portion of that time. He was president of the bank from 1904 to 1906. W. H. West was the president of the bank from the date of its organization until 1904, and also from 1906 until the date of its failure. H. T. Hackney was the cashier and a director of the bank from 1904 until May 8, 1908. It appears from the testimony that said West was indebted to the bank in the sum of $28,445.52 at the date of its failure, and that this indebtedness had existed for at least a year

prior to that time, and that for a number of years he was a large debtor of the bank. At the date of the failure he owed at least $90,000, and there is grave doubt whether any substantial part of his debt to the bank will ever be collected. The cashier, Hackney, owed the bank $14,055.53 at the date of its failure, and a large portion of this debt existed for several years prior to that time. He is totally insolvent, and left the bank and the town of Coal Hill on May 8, 1909. There were other large individual debtors of the bank who were insolvent and whose indebtedness existed for some years prior to its failure. The chancellor found (and his finding, we think, is fully sustained by the evidence) that the bank was in an insolvent condition for at least a year prior to its failure, if not longer. In 1905 a dividend was declared by the board of directors of this bank, and in September, 1908, a stock dividend of 15 per cent. was declared by the same board of which defendant was a member. At the time these dividends were declared the true condition of the bank did not justify this to be done. On May 8, 1909, defendant sold to the plaintiff 124 shares of the subscribed capital stock of the bank, 37 shares of which were stock dividends and of the remainder only 30 per cent. had been paid up. The plaintiff had never had any connection with the bank, and knew nothing of its affairs and condition, although he had been a depositor at some time. At the time defendant sold his bank stock to plaintiff he told him that it had declared a dividend of 15 per cent. the preceding year, and that it would pay a like sum the current year, and that there was only one piece of bad paper in the bank, and that he thought that would be finally paid. He also told him that he had been offered $2,250 for his stock by said West, and showed him a letter in which the cashier had written him that West, the president, had offered $2,250 for his stock. It appears that the plaintiff and defendant had been negotiating relative to the purchase and sale of said stock for about 10 days prior to May 8th, and that in the latter part of April, 1909, a correspondence was had between the defendant and said cashier, in which the cashier finally wrote that the above offer was made by the president, West. Upon being told by defendant of this offer, the plaintiff, before consummating the purchase, wrote to said West asking if he would give the $2,250 therefor. It would appear that West replied that

he would buy the stock at that price, and after plaintiff had acquired it he offered to give his notes therefor due in six and twelve months, but refused upon demand of plaintiff to allow the stock to remain as collateral therefor, and on this account the sale to him was not made. There were a number of other facts and circumstances adduced in evidence in this case tending to show that the affairs of this bank had been not only mismanaged but fraudulently operated, for a considerable time prior to its failure, by its officers, and also facts from which it could be reasonably inferred that defendant at least knew that it was not in a good financial condition if not insolvent. The defendant testified that he did not know the condition of the bank, and that he had on deposit therein at the time of its failure from $500 to $600. But he had been a director of that institution from its organization to its suspension and also a member of its board which passed on and made loans, and had been its president for two years. While he had the above sum on deposit at the time of the bank's failure, he also owed it a large sum for stock which had been subscribed for by him, but 70 per cent. of which had not been paid. While he also testified that he was not on friendly terms with West, the president, yet it appears that through the cashier he secured West to make an offer for the stock which came about the time he was negotiating with plaintiff for the sale thereof, and without endeavoring to close any deal with West he promptly told plaintiff of the offer. West was called as a witness in defendant's behalf, and his testimony was strongly in favor of defendant. He even went so far as to testify that he thought the bank was perfectly solvent when he knew that he, its president, had borrowed $28,000 of its funds, when its paid-up capital was only $12,000, and that his own financial condition was bad. It is possible that his offer to purchase this stock was made in good faith, but from the facts and circumstances we think that the chancellor was warranted in finding that this correspondence between the cashier, president and defendant relative to the purchase by West of his stock was inspired for the purpose of causing plaintiff to value the stock at the price thus offered, and had that effect when defendant told him of the offer. It is urged by defendant that he did not know the true condition of the bank, but the plaintiff had a right to believe that, as its director, he had given to the affairs of the

bank that measure of care, skill and diligence which the law demands; and that is such diligence which a reasonably prudent business man exercises in the conduct of his own affairs. The plaintiff had a right to rely upon his representations relative to its condition because these matters should be within his peculiar knowledge as a director thereof. When he represnted to the plaintiff that the bank had made and declared a dividend of 15 per cent. for the preceding year, and would in his opinion make and declare the same sum for the current year, he did not give a mere expression of opinion, but this was in effect a statement of fact that the bank was in prosperous financial condition. When he told him further that there was only one piece of bad paper among its assets, and that he thought it would be finally collected, he again made a representation of fact upon which plaintiff was warranted in relying. Whether he knew that these statements were false or whether he had no knowledge whatever relative to them, still by his words and conduct he made these representations as of personal knowledge, and these statements, being untrue, became in law false representations and fraudulent.

We think, therefore, that the finding of the chancellor that the plaintiff was induced to purchase the bank stock by reason of the false and fraudulent representations made by the defendant is sustained by the preponderance of the evidence, and that he was correct in holding that the sale thereof should be rescinded on account of such fraud.

The decree is accordingly affirmed.