### CARWELL *v.* DENNIS.

Opinion delivered January 15, 1912.

1. FRAUD—MISREPRESENTATION.—A misrepresentation, in order to affect the validity of a contract must relate to some matter of inducement to the making of the contract in which, from the relative position of the parties and their means of information, the one must necessarily be presumed to contract upon the faith of the other's statement. (Page 607.)

2. EXCHANGE OF LANDS—RESCISSION.—An exchange of lands will not be rescinded where there was no misrepresentation, and neither party had any better means of knowledge concerning the lands than the other. (Page 608.)

3. EVIDENCE—PAROL EVIDENCE AFFECTING WRITING.—The consideration named in a deed is only *prima facie* correct, and parol evidence is admissible to prove the real consideration.   (Page 610.)

Appeal from Cross Chancery Court; *Edward D. Robertson,* Chancellor; reversed.

#### STATEMENT BY THE COURT.

On the 4th day of April, 1910, H. T. Dennis instituted this action in the chancery court of Cross County, against S. M. Carwell.   His complaint alleges that on the 9th day of December, 1902, he sold and conveyed to S. M. Carwell, four hundred and twenty acres of land in Cross County, Arkansas, for the sum of $4,000, and that he received in payment

therefor the sum of $400 in cash and a house and lot in the town of Windsor, in the State of Missouri, valued at $900, and a certain tract of land in Buchanan County, State of Virginia, valued at $2,400; that the defendant Carwell falsely and fraudulently represented to him that he owned a tract of land in Virginia comprising 480 acres, and that same was worth $2,400; that in truth and in fact the defendant did not own any lands in the State of Virginia.

The prayer of the complaint is that plaintiff have judgment for $2,400; that the same be adjudged to be a lien on the Cross County lands and for all other relief consistent with the allegations herein.

The defendant Carwell filed an answer in which he denies all the material allegations in the complaint. He avers the truth to be that the plaintiff exchanged his Cross County lands for the house and lot of the defendant in Windsor, Missouri, for $400 in cash and for the Virginia lands; that the consideration expressed in the deeds was placed there by the plaintiff with a full knowledge of all the facts. The defendant avers further that the house and lot in Windsor, Missouri, with the $400 in cash, constituted the main and principal consideration for the exchange of the lands; he averred that the Virginia lands represented a very small and inconsiderable part of the real consideration moving the parties in the exchange of the lands. He alleges that he especially informed the plaintiff before the exchange was made that he had never seen the Virginia lands, and knew nothing about their existence or value except that he had a deed to them.

H. T. Dennis testified: "On the 9th day of December, 1902, I sold to S. M. Carwell 420 acres of land in Cross County, Arkansas, for $4,000. In paying for the lands S. M. Carwell deeded to me 480 acres of land in Buchanan County, Virginia, the price on which was $2,400. I depended entirely on the statement of Carwell as to the value of the Virginia lands. He stated that their value was $2,400, and I took them at that price. Afterwards I went to Virginia to examine the lands, but I could not find them. I was informed that there were no lands there answering to the description of my deed. The defendant also paid me $400 in money and conveyed to me a house and lot in Windsor, Missouri. The defendant read

to me what he pretended to be an abstract to the Virginia lands. The abstract purported to show that the lands were in existence." He also produced a lot of letters showing that he had this land in Virginia.

Plaintiff also introduced other evidence tending to show that there was no such lands in Virginia as those described in the deed to him.

The defendant Carwell testified: "At the instance of Rean & Ridenpur, the agents of the plaintiff, I went to Cross County to look at his land. After some conversation I told him there was no use in talking dollars and cents, but that if he wanted to trade and exchange property, we would see what we could do. I told him that I would give him in exchange for his lands, my Windsor property, of which I had a photograph of the house and lot, and the Virginia land of which I showed him a deed I had to it, and would pay off a mortgage of $400 on his land. The exchange was made in this way, and I finally paid him $100 in addition to the $400. I told him that I knew nothing about the Virginia lands, and had never seen them. I showed him a letter which stated that there was some railroad which had started in that direction, but that I knew nothing whatever about the Virginia lands. I told him that I had taken a deed to them without knowing any more about them than was mentioned in the letters which I showed to him, and that if he took a deed to the lands he would have to take his chances just as I had done, and this was agreed between us. I could have gotten $1,200 for my house and lot in Windsor just before I conveyed it to him. In addition, as above stated, I paid him $500 in cash. I told him that I did not know whether the Virginia lands were worth anything or not, and that I did not know anything about their existence except that I had a deed to them and the information which I had in the letters and which I showed to him as above stated. At the time we traded the Cross County lands of the plaintiff were worth about $1,750. When we went to make the contract, Mr. Jordon who prepared it asked me what the consideration was, and I turned to Mr. Dennis and asked him what to say; Mr. Dennis gave him the consideration; I think that it was $2,400 for the Virginia lands; $800 for the Windsor property and $4,000 for the Cross County lands. But the

real consideration for the exchange was as I have above stated, and was so understood by both Dennis and myself."

A. Jordon testified: "Some time in March, 1902, I was called by Mr. H. T. Dennis to draw up a contract between himself and Mr. S. M. Carwell. It was understood that Carwell was to give Mr. Dennis the Missouri property and the Virginia property above mentioned and $400 or $500 in cash for the Cross County lands. Afterwards I wrote the deed made by Dennis to Carwell. At the time I prepared the contract, Carwell told Dennis that he had purchased the Virginia lands without seeing them. When the consideration of the Virginia lands came up, Mr. Carwell told Mr. Dennis the land was about fifty miles from the railroad, and that it was a mountainous country, but that they were talking about building a railroad to run in the direction of the land, but that from the condition of the land where it lay, and from what he had learned about it, he did not consider it worth much. He told him that he had never seen it, and did not know what kind of a consideration to put in the deed for it." He now says after the contract was made and before the deeds were exchanged "I had a talk with Dennis and told him that he had made a very foolish trade. He seemed to be satisfied about it, and said that he knew what he was doing. He afterwards repeated to me what Carwell had said about Virginia land, and said that he would not complain if he could find any land at all." He stated that at the time the exchanges were made the Cross County lands were worth about $1,450.

Dr. J. Grode, testified: A short time after the exchange of lands was made between Dennis and Carwell, Dennis told me that Carwell had never seen the Virginia lands, and did not know what they were worth. He further told me that he did not know what they were worth, and did not care, as he was satisfied with the trade he made any way. Dennis started to go and see about the lands and got as far as Memphis. He then came back to my house and told me that it didn't make any difference what kind of land it was, or whether it was worth anything, that he was going to Missouri. He never complained about being imposed upon by Carwell; he only complained that Carwell was slow about the payment of the four hundred dollars.

J. O. Hawk, testified: That, shortly after the trade between Dennis and Carwell was made, Dennis was in his store in Cross County. Different ones were teasing Dennis about the Virginia land. Dennis said: "It was all right about the Virginia hills; he got value received, if he never saw his Virginia hills, for his damned frog pond." At the time of the exchange, $3 or $4 per acre would have been a fair price for the Cross County land.

The chancellor entered a decree cancelling the deeds made by the parties to each other, and the defendant has appealed.

*O. N. Killough* and *H. W. Applegate*, for appellant.

The real consideration for the execution of a deed may be proved. 82 Ark. 492; 75 Ark. 89. When fraud is alleged, it must be clearly proved. 95 Ark. 131; 82 Ark. 20; 20 Cyc. 120. A conveyance to an innocent purcheser for value raises no presumption of fraud. 56 Ark. 253; 86 Ark. 150; 60 Ark. 70. A nonresident purchasing land in this State is an innocent purchaser for value, even though the purchase was made after the filing of *lis pendens.* Kirby's Digest, § 5149. Luella Dennis could not claim the benefits of *lis pendens* prior to the time of becoming a party to the suit. 44 Ark. 48; 10 Paige 499.

*J. J. Mardis*, for appellees.

The value of fictitious lands fixed in a deed is conclusive. 44 Ark. 180. When the plaintiff files a *lis pendens,* his power over the paper ceases. Castle's Supp. to Kirby's Digest, § 5149. Actual notice of fraud is not necessary. If the purchaser has knowledge of facts which would lead to a discovery of the fraud, he will be charged with notice of the fraud, provided they are such as would put a man of common knowledge and sagacity upon inquiry. 50 Ark. 320; 136 Ala. 657; 37 Fla. 244; 114 Cal. 451; 32 Ill. 130.

HART, J., (after stating the facts). 1. It will be noted that the plaintiff brought this suit to recover damages for alleged false representation in making the contract, but no objection was made to the jurisdiction of the court by the defendant, and no motion was made to transfer the case to the circuit court. The chancellor treated the case as an action to rescind the contract for fraud, and entered a decree accordingly. Assuming that his action in this respect was within the scope of

the issues as presented by the pleadings, we think his decision was wrong. The rule in such cases in this State is thus stated in *Hill* v. *Bush*, 19 Ark. 522: "That a misrepresentation, in order to affect the validity of a contract, must relate to some matter of inducement to the making of the contract, in which, from the relative position of the parties and their means of information, the one must necessarily be presumed to contract upon the faith and trust which he reposes in the representations of the subject of the contract. For, if the means of information are alike accessible to both, so that with ordinary prudence or diligence the parties might respectively rely upon their own judgment, they must be presumed to have done so. Or, if they have not so informed themselves, must abide by the consequences of their own inattention and carelessness."

Again, in the case of *Matlock* v. *Reppy*, 47 Ark. 148, the court said:

"Actions of this character should be subjected to four tests in order to determine whether they may be maintained:

(*a*) Was the fraud material to the contract; did it relate to some matter of inducement to the making of the contract?

(*b*) Did it work an injury?

(*c*) Was the relative position of the parties such and their means of information such, that the one must necessarily be presumed to contract upon the faith reposed in the statements of the other?

(*d*) Did the injured party rely upon the fraudulent statements of the other, and did he have a right to rely upon them, in full belief of their truth?"

We think the whole substance of this transaction was an exchange of lands between the parties. It is true the plaintiff says that he sold his lands to the defendant for $4,000 and took as part payment his house and lot in Windsor, Mo., and the Virginia lands. He also says the defendant represented the Virginia lands as comprising 480 acres and that its value was $2,400. The defendant, however, flatly contradicts the testimony of the plaintiff. He states that he expressly told the plaintiff that he would not consider a purchase with dollars and cents as a consideration. He further states that it was agreed between them that the plaintiff would exchange his lands in Cross County for the defendant's house and lot in Missouri,

his Virginia lands and $500 in money. He says that he informed the plaintiff that he had never seen the Virginia lands, and knew nothing about them either as to their value or existence, except that he had a deed to them and certain letters in regard to their condition and situation; that he exhibited his deed and these letters to the plaintiff, and that the plaintiff then knew as much about the land as he did himself. Mr. Jordon, who prepared the contract between the parties, says that when the question of consideration came up the defendant told the plaintiff that he had never seen the Virginia lands, and did not consider them worth much, and did not know how to value them.

The other witnesses for the defendant stated in substance that the plaintiff expressed himself as satisfied with the trade he had made and did not care how much the Virginia lands were worth. It also appears from the testimony that the value of the house and lot in Windsor, when added to the $500 paid to the plaintiff by the defendant, exdeeded the value of the Cross County lands at the time the trade was made.

From all of these facts and circumstances, we think it appears from a clear preponderance of the testimony that the defendant told the plaintiff all he knew about the Virginia lands, and that he had no better means of knowledge as to their conditions and situation than he gave to the plaintiff. The parties therefore, dealt on equal terms with each other, and did not deal on a basis of trust and confidence.

It follows that the chancellor erred in decreeing a cancellation of the deeds on account of the alleged fraudulent representation of the defendant.

Neither do we think that the plaintiff was damaged by the fact of the nonexistence of the Virginia lands. It is established by the evidence that no lands of the description given in the deed were in the State of Virginia; but, as above stated, the plaintiff knew as much about the existence and value of these lands as did the defendant. From all the evidence except that of the plaintiff himself, it appears that these lands were not considered by the parties in making the trade to have any appreciable value. Neither party had any information as to their existence or value except that they were described in the deed which the defendant had and were also referred to in

the letters which he showed to the plaintiff. It was expressly understood between the parties that the plaintiff was simply to take his chances in regard to the Virginia lands, and as above stated they were not regarded as having any real value. We are strengthened in this view by the testimony of all of the witnesses in the case, except the plaintiff himself, that the house and lot in Windsor and the $500 paid by the defendant to plaintiff exceeded in value the Cross County lands at the time the exchange of property was made. Another significant fact is that the plaintiff never went to Virginia to examine these lands until after this suit was instituted.

The consideration expressed in the deed of the Virginia lands is $2,400. Counsel for plaintiff urges that this is conclusive, and cites *Carmack* v. *Lovett*, 44 Ark. 180, where the court held that a party claiming under a deed that is attacked as fraudulent as to creditors can not support it by showing a different consideration from that expressed on its face. That case has no application to the state of facts before us, and the general rule applies. It is that the consideration named in a deed is only *prima facie* correct, and parol evidence is admisible to prove the real consideration. *St. Louis & North Arkansas Rd. Co.* v. *Crandell*, 75 Ark. 89, and cases cited; *Morton* v. *Morton*, 82 Ark. 492.

It follows that the court erred in rendering a decree in favor of the plaintiff cancelling the deeds in question, and the decree will be reversed and the case remanded with directions to dismiss the complaint for want of equity.