HELD *v.* MANSUR.

Opinion delivered May 19, 1930.

878

*H. M. Barney* and *W. H. Arnold,* for appellant.

*G. G. Pope* and *Shaver, Shaver & Williams,* for appellee.

HART, C. J., (after stating the facts). A person who has been induced to enter into a contract for the purchase of property by the false representations of the vendor concerning its quantity or quality may, at his

election, pursue one of three remedies. First, he may cancel the contract and, by returning or offering to return the property purchased within a reasonable time, entitle himself to recover whatever he had paid upon the contract. In the second place, he may elect to retain the property and sue for the damages he has sustained by reason of the false representations of the vendor as to the land; and in this event the measure of the damages would be the difference between the real value of the property in its true condition and the price at which he purchased it. In the third place, to avoid a circuity of actions and a multiplicity of suits, he may plead such damages in an action for the purchase money, and is entitled to have the same recouped against the sum he had paid for the land. *Matlock* v. *Reppy,* 47 Ark. 148, 14 S. W. 546; and *Danielson* v. *Skidmore,* 125 Ark. 572, 189 S. W. 57.

In the present case, the purchaser of the real estate mortgage elected to pursue the second of these remedies. He might have sued for damages at law; but, under the authorities above cited, no objection having been made to the jurisdiction of a court of equity, none can be raised on appeal. Besides this, the plaintiff also asked for a foreclosure of the mortgage; and, in order to avoid a multiplicity of suits, it is settled in this State that when equity takes jurisdiction of a case for a matter cognizable only in equity, it retains the case to administer the legal after the equitable relief. *Short* v. *Thompson,* 170 Ark. 931, 282 S. W. 14.

While the general rule is that the statement of the value of the property is a mere matter of opinion and cannot be made the basis of an action for fraud, still there are exceptions to the general rule. The rule established in this State is that false statements of fact, intentionally made, to one who is ignorant of the quality or value of the property under consideration under such circumstances as indicate a purpose that such statements are to be relied upon, where the purchaser has no oppor-

tunity to examine the property, may be treated as an affirmation of fact and fraudulent. Where the vendor knows that the purchaser is wholly ignorant of the value of the property, and knows that he is relying upon his representations, the representations do not take the form of a mere expression of opinion, but are in the nature of a statement of fact. The reason is that the vendor knows that the statements he has made are untrue or are made in reckless disregard of the truth, and it cannot be doubted that he knows and believes that such statements will have a material influence upon the purchaser. *Carwell* v. *Dennis,* 101 Ark. 603, 143 S. W. 135; *Hunt* v. *Davis,* 98 Ark. 44, 135 S. W. 458; *Bell* v. *Fritts,* 161 Ark. 371, 256 S. W. 53; *Cleveland* v. *Biggers,* 163 Ark. 377, 260 S. W. 432; *Laney-Payne Farm Loan Co.* v. *Greenhaw,* 177 Ark. 589, 9 S. W. (2d) 19.

Under all these cases, and under many more which might be cited, this court is committed to the rule that if the vendor, having actual knowledge of the matter or in reckless disregard of the truth, induces the buyer to rely on his false statements, he will not be heard to say that the purchaser could have ascertained the truth. In the first place, the false representations relied upon may have caused the purchaser to forbear from making further inquiry; and in the second place, as is true in the present case, the purchaser may have lived in a distant State, and it was not practical for him to come to the county in which the land was situated and make an examination of it. There was nothing to put a person on notice that the representations were false. These cases all hold that, while ordinary statements of value of property are mere expressions of opinion on which the purchaser is not entitled to rely, yet statements of fact which affect the value of property, if false, and made for the purpose of inducing the purchaser to rely thereon, are false representations which will constitute fraud in law. The false representations may be established by positive and direct testimony, or by circumstantial evidence, or by both.

In the present case, we think the false representations were established by a preponderance of the evidence, and that there can be no doubt about the fact that the purchaser of the note and mortgage involved in this case relied upon the representations. Mansur admits in his testimony that he was a mere figurehead in the transaction, and that he acted for the Dorsey Company. The Dorsey Company and the security company which made the loan had offices in the city of Texarkana, Arkansas, and during much of the time covered by this transaction had offices in the same building. The security company was in the business of making farm loans, and in aid thereof had a set of abstract books. Mansur was introduced to the president of the security company by the president of the Dorsey Company. The money borrowed was paid to the Dorsey Company. The security company paid the recording fees for the deed from the Dorsey Company to Mansur, and for the mortgage from Mansur to the security company. The attendant circumstances and the relationship of the officers of these two companies all point to the fact that the officers of the security company knew that the representations as to the value of the land were false, or that they were made in utter disregard of the truth. The land was situated in Miller County, and, according to a clear preponderance of the evidence, was subject to overflow and has never been susceptible of cultivation. They were cut-over lands, and half of the tract was cleared and a small house was built on it for the purpose of securing the loan. The land was represented by the borrower to be worth $9,700, and the inspector sent out by the security company reported it to be worth $8,000. The inspector was an officer of the company. While there is a dispute over this point, we think a clear preponderance of the evidence shows that the lands were practically worthless because they were subject to overflow, and could not be drained except at a prohibitive cost. It is fairly inferable that the officers of the security company knew that Mansur was a mere figurehead, and had no property whatever. They

must have known that his representation in his application that he had 1,000 acres of land and $18,000 worth of personal property unincumbered was false.

It is true that the officers of the security company testified that they transferred the loan to Rosentiel and thereafter had no connection with it. In this respect, however, they are contradicted by the attendant circumstances. Rosentiel was a stockholder in the security company, and had been acquainted with its officers for a good many years. He was accustomed to buying these farm loan mortgages at a small discount and transferring them to other parties. By arrangement between the security company and Rosentiel, the former collected the interest, paid the taxes, and generally looked after the loans. In 1925, when the Dorsey Company ceased to pay the interest on the loan, and was about to be placed in the hands of a receiver, the Security Mortgage Company employed a lawyer to foreclose the mortgage. When all these facts and circumstances are considered together, we think that the assignment and transfer of the note and mortgage by the security company to Rosentiel was colorable merely, and that Rosentiel acted for the security company in selling and transferring the note and mortgage to Held. Rosentiel and Held were intimate friends, and Held did not discover the fraud which had been practiced upon him until the latter part of 1927, or the first part of 1928. Therefore, we are of the opinion that he had a right to sue for damages for false representations, which induced him to buy the note and mortgage in question, and that the chancery court erred in not so holding.

It is contended, however, by counsel for appellees, that the decree of foreclosure had in 1925 should not be set aside because no fraud was practiced upon the court in the foreclosure proceeding. We do not agree with counsel in this contention. It is true that it was held in *H. G. Pugh & Co.* v. *Ahrens,* 179 Ark. 829, 19 S. W. (2d) 1030, and the cases cited therein, that the fraud which

will justify the setting aside of a judgment or decree must be such as prevented the unsuccessful party from presenting his case fully, or which operated as a fraud or imposition upon the jurisdiction of the court, and that mere false testimony is not enough if the disputed matter was in issue in the case in which it was given. Held did not know anything whatever about the foreclosure proceeding which was had in 1925. The security company procured an attorney to institute the foreclosure proceedings, and Held was left in ignorance of the whole matter. The attorney presented a copy of the mortgage and note in question, and procured the court to grant the decree upon the reliance that he had authority to bring the suit, and the custody of the note and mortgage sued upon. No matter whether the attorney knew of the fraud practiced on Held by the Security Mortgage Company or not, he acted for the security company, and will be deemed in law to have participated in the fraud practiced by that company upon the court. It cannot be doubted that the chancery court would have refused a decree of foreclosure. if it had been informed of the fact that Held, the holder of the note and mortgage, was in ignorance of the whole proceeding, and had no part in it. Therefore, we are of the opinion that the foreclosure proceeding in the chancery court in 1925 was obtained by fraud, and that the decree should be set aside on that account.

The result of our views is that the chancery court erred in not awarding damages to appellant for false representations in selling him the loan and mortgage, and in refusing to set aside the decree of foreclosure of the mortgage. From the authorities above cited, the measure of damages will be the difference between the price for which the land may be sold under the foreclosure proceedings, and the amount which Held paid for the note and mortgage, together with the accrued interest and the taxes due on the land. Therefore, the decree will be reversed, and the cause will be remanded for further proceedings in accordance with this opinion,

and not inconsistent with the principles of equity. It is so ordered.