SMITH *v.* LEEPER.

4-3599

Opinion delivered November 19, 1934.

*Oscar T. Jones,* for appellant.

*Dene H. Coleman* and *Chas. F. Cole,* for appellee.

BAKER, J.  The appellee in this case, about thirteen years ago, purchased an eighty-acre tract of land in Independence County from Mack T. Smith, the appellant, and agreed to pay the sum of $2,000 therefor, executing eighty-five notes of $20 each.  He paid $300 about January 1, 1921, and at that time, or soon thereafter, took a deed and executed a mortgage to secure the deferred payments.

At the time of this purchase both of the parties lived in Chicago, and the appellee says that he had never seen the land; that it was represented to him by the appellant, as an inducement to cause him to purchase the land, as being located upon a good road, when in fact it was not upon any road; that one had to pass through the lands of three different landowners to reach a road or mail route; that he represented the character and quality of the land as being excellent, free from rocks and suited to truck farming, when in fact it was rocky and not well adapted to truck farming, very poor soil; that he further represented that there was certain merchantable timber on the land, sufficient to pay for it, when in fact there was no merchantable timber whatever.

Appellee also charges that Smith represented that all of said land was capable of being placed in cultivation, when in fact there was only a small portion thereof suitable for cultivation; that he represented there was a good house and barn on the property, and that the land was fenced, when in fact there was no barn and no fence and that the house was in a very bad state of repair, and it was necessary to go to a great expense to make it habitable.

A contract was entered into in October, 1920; that the deed and notes were executed in January, 1921. It was some considerable time after that, perhaps a year, before the appellee saw the land, and he at once attempted to rescind the contract, but was persuaded by Smith not to do so, and Smith promised that he would grant him a reduction and make adjustment with him before final settlement would be required in payment for the land.

At the time the suit was filed there was due $400 of the principal sum under the contract, which, together with interest, amounted to about $600. This amount Leeper refused to pay. Smith proceeded to make sale of the land under the power granted in the mortgage and procured Oscar T. Jones to sell the land, at which sale Smith became the purchaser. Leeper brought suit to cancel this sale made under the mortgage, and for dam-

ages, and Smith, by way of cross-complaint, asked for the foreclosure of the mortgage, or deed of trust.

Leeper, in his testimony, said that he saw Smith's advertisement in *The Chicago Daily News;* that he wanted to buy a place for a home; that he saw Smith and took notes in a memorandum book as to Smith's statements or representations. Among other things set out in the notes, which Leeper says he took down, is the fact that Smith recited that all of the land could be cultivated, except a small portion, and that there was timber enough on the place to pay for it; could raise vegetables of all kinds, beets and tomatoes one and a half to two pounds; land not rough but gently rolling; spring water, sufficient to irrigate the place; good soil; grow anything you plant; about thirty acres in cultivation; near churches; road and mail route near place; good road out; place fenced; good barn; house the best on south side of the river; other buildings, spring house; had six acres of fine orchard bearing peaches; tenant on the place named Cazort.

Leeper, without investigating but relying upon all of the representations so made, contracted for the land. In this suit he said there was no merchantable timber upon the land; no barn upon it; no fence; no orchard; that the house was in a very bad condition; the soil very poor and not productive; that the property was not worth exceeding $1,000 at a high price.

Other witnesses testified the property to be worth from $400 to $600. Cazort, who lived upon the place was also a witness. He states that he received a letter from Smith, who advised him he had found a buyer for the place at $2,000 and asked him to make the place as attractive as possible; to meet the purchaser at the depot and take him to the farm late in the afternoon, just in time to get the train out the same day; that he thought the deal would go through and that he would pay Cazort for his trouble, and also that he didn't want Leeper to get in touch with any real estate men for fear they would try to switch him to some other place; to keep the information given him in the letter to himself and to do his

best to help make the deal go through and not to say anything to anybody until afterward.

Cazort said that he lived on the place four or five years, one year before Leeper came and four years after he came. He said that the timber on the place was fit for fire wood only; that the barn had been torn down for kindling the year before.

Smith testified that Leeper's attitude was a shock to him and offered a letter written by Leeper and his wife stating that they had paid the taxes, no advertising fee, that all the favors and help extended to them seemed like mountains of blessing and were received with real appreciation. Trusted that they might not always be up against it, that instead something may come their way which would make it possible for them to meet their full obligations and duty. Smith admitted he wrote the letter to Cazort concerning the purchaser who would come to look at the place.

The chancellor, upon the trial of this cause, found that this was a suit in recoupment for the deceit alleged to have been practiced by Smith upon Leeper. He set aside the sale, wherein the land was sold by Smith and bought by Smith, under the power contained in the mortgage or deed of trust. No question is raised about the correctness of this part of the decree. He found also that Leeper had paid full value for the land and canceled the other or outstanding notes and mortgage and quieted the title in Leeper against Smith; dismissed Smith's cross-complaint, wherein Smith was seeking to foreclose the mortgage for the balance due upon the remaining portion of the contract or purchase price.

It is urged upon this appeal that much of the evidence, or, at least, part of it offered by Leeper contradicts the contract. This is not correct, and this contention can arise only upon a misconception of the nature of the suit. The contract does not say, of course, that there was a barn upon the place, but Smith had lived upon the place at one time, and there was one at that time. It is not in contradiction of the contract for Leeper to testify that there was no barn upon the place, nor is he prevented from testifying that Smith told him

there was a barn there merely because of the fact that no barn is mentioned in the written contract. The fraud or false representations, or deceit, is the gist of Leeper's contention, and, if he were not permitted to show that the statements made as an inducement to him to enter into the contract were untrue, because of the fact that Smith did, or did not, write these statements into the contract, then the anomalous situation of preventing a recovery in the case would arise, for the reason that Smith had not only deceived him, but had contracted with him so as to perpetuate and make workable this deceit without relief. Leeper ratified the contract but sought relief in recoupment.

This court has said in several cases that one of the remedies of the victim in the case of deceit is to await the effort to collect the money and then assert his remedy by way of recoupment for damages. Leeper, the appellee, has done this.

It is urged also that Leeper's claim is stale; that he has not been diligent, but Leeper's explanation is entirely tenable, at least not unbelievable, that is, to the effect that Smith had insisted that he keep the property, promising that he would adjust the price with him on the last payments. To argue that he should not have waited thereafter would be tantamount to arguing Smith's lack of honor and good faith. Perhaps he should not have relied upon this promise of Smith's, but should have proceeded at once with the suit, either to rescind or to recover his damages, but under the circumstances Smith may not properly urge that defense. Smith was making an effort to collect this money, alleged to be due him, by sale of the land under the power contained in the mortgage. Leeper filed his suit to cancel this sale and deed made under it and asked for damages.

Chief Justice HART, speaking for the court, in the case of *Held* v. *Mansur*, 181 Ark. 876, 881, 28 S. W. (2d) 704, said: "In the third place, to avoid a circuity of actions and a multiplicity of suits, he may plead such damages in an action for the purchase money, and is entitled to have the same recouped against the sum he has paid for the land. *Matlock* v. *Reppy*, 47 Ark. 148, 14

S. W. 546; and *Danielson* v. *Skidmore,* 125 Ark. 572, 189 S. W. 57. In the same case Chief Justice HART said further: "Where the vendor knows that the purchaser is wholly ignorant of the value of the property, and knows that he is relying upon his representations, the representations do not take the form of a mere expression of opinion, but are in the nature of a statement of fact. The reason is that the vendor knows that the statements he has made are untrue or are made in reckless disregard of the truth, and it cannot be doubted that he knows and believes that such statements will have a material influence upon the purchaser. *Carwell* v. *Dennis,* 101 Ark. 603, 143 S. W. 135; *Hunt* v. *Davis,* 98 Ark. 44, 135 S. W. 458; *Bell* v. *Fritts,* 161 Ark. 371, 256 S. W. 53; *Cleveland* v. *Biggers,* 163 Ark. 377, 260 S. W. 432; *Laney-Payne Farm Loan Co.* v. *Greenhaw,* 177 Ark. 589, 9 S. W. (2d) 19."

Smith's letter to Cazort, attempting to arrange with Cazort to so manage Leeper upon his trip to visit the farm so as to not permit any one to meet or talk with him about the property, indicated pretty clearly his intention to deceive, and he did, in fact, deceive Leeper. *Myers* v. *Martin,* 168 Ark. 1028, 272 S. W. 856.

The court held that the remaining notes should be canceled. The brief of appellee suggests that further relief ought to be given Leeper, under the proof in the case, to the effect that the property was worth only five or six hundred dollars. We think, however, that, inasmuch as Leeper had paid of the principal amount $1,600 before he quit paying in order to enforce his remedy, the most he could consistently ask is what the court gave him, that is, relief from the payment of the balance of $400 and interest.

The chancellor's ruling is supported by the authorities, and seems not to be against a preponderance of the evidence, but is well supported by it.

It follows therefore that the case should be affirmed, and it is so ordered.