CITY·NATIONAL BANK *v.* STERNBERG.

4-4916

Opinion delivered January 31, 1938.

504

James B. McDonough and W. L. Curtis, for appellants.

Daily & Woods, for appellee.

MEHAFFY, J. The McKinney Bayou Drainage District was organized in 1923 and issued $446,000 in 5½ per cent. bonds. I. H. Nakdimen was the president and active manager of the City National Bank of Fort Smith, Arkansas.

It is undisputed that in July, 1929, appellee was in the City National Bank and that I. H. Nakdimen said he was on a trade for some bonds. About six weeks after that time the appellee bought twenty-three $1,000 bonds at 95 cents on the dollar.

Appellee testified that when Nakdimen spoke to him about the bonds he called appellee's attention to the fact that appellee owned some Fayetteville paving bonds which were about to mature, and asked appellee if he had made arrangements about reinvesting the money. Nakdimen told appellee that he was on a trade for some bonds, and he bought the bonds on September 9 from Nakdimen. He testified that Nakdimen said he knew the bonds were good; that he had investigated them. He said again on September 9th: "I have these bonds now, and they are good." He stated that he knew as much, or more about bonds, as anybody in town; that he never bought a bond until he knew all about it, and he knew these were good. Nakdimen then directed one of the employees to bring the package of McKinney Bayou

bonds. The package was brought, and Nakdimen said he had twenty-three $1,000 bonds there, and they draw only 5½ per cent. interest; that he could sell them to appellee at 95 cents, which would make them pay 6 per cent. Nakdimen said he bought them a little cheaper than that and he had to make a small profit on them; appellee told Nakdimen he would take five, and Nakdimen said "No. I want to sell you all of them." When appellee said he could not pay for them all, Nakdimen said: "You have those Fayetteville paving bonds, and most of them will mature pretty soon and I can take them in and what you lack paying for them I will lend you the money at 6 per cent., and they will pay themselves out in no time at all." Appellee said he let Nakdimen talk him into purchasing the bonds. Nakdimen called his son and directed that a check be made out for $23,138. The $138 was accrued interest. Appellee signed a note to the bank for $9,500 and the bank kept the bonds as collateral. In February, 1930, witness called Nakdimen's attention to the fact that the interest was due on the bonds. Nakdimen got the bonds, clipped the coupons and gave witness credit for $632.50. Those coupons had not been paid by the district, but Nakdimen did not tell witness that. He said that when he demanded his money back, about the first of the year, 1934, Nakdimen told him that he still had the coupons and witness did not think any more about it until six months later, and by that time he had paid off his note at the bank.

Appellee testified that he talked to Nakdimen frequently and Nakdimen would tell him the bonds were good as gold and that he would stand behind appellee and not let him lose a cent.

The evidence shows that at the time the bonds were sold to appellee, a receiver had already been appointed for the district because it had failed to meet its obligation in the payment of principal and interest on the bonds. Nakdimen says that he did not know that a receiver had been appointed, but the evidence shows that the bonds were offered at Texarkana, near the district, for fifty cents on the dollar, and there were no pur-

chasers. The evidence shows that they finally went down in price to five cents, but afterwards the market value rose to twenty cents.

Nakdimen testifies that he paid seventy-two cents for the bonds, but that he did not go to Texarkana and investigate because he said it was not necessary; and yet if he paid seventy-two cents for the bonds, he did it when the market value was fifty cents or less. Any investigation at all at Texarkana would have shown that the district had defaulted in its interest, and that because of that a receiver had been appointed and the bonds were offered on the market for fifty cents.

According to appellee's testimony, when he learned that a receiver had been appointed and talked with Nakdimen about it, that Nakdimen told him that that made the security better; that Nakdimen said when the district will not collect the assessments, a receiver is appointed and the receiver will collect the assessments and pay the principal and interest of the bonds and he would get 10 per cent. interest instead of 6 per cent.

Mr. H. S. Nakdimen testified that the bonds were not in default at the time the bank purchased them, and testified that they were worth ninety-five cents at the time they were sold to appellee. I. H. Nakdimen testified to the same thing.

The testimony is quite long and there is some conflict in the testimony, but we think the undisputed facts show that the receiver had already been appointed before Nakdimen sold the bonds to appellee; that the district had defaulted in its payment; that many people had not paid their taxes, and that the condition of the district was such that at the time of the sale the market value was less than fifty cents.

Mr. Nakdimen testified that he did not know these facts and that he had made a thorough examination. The evidence, however, conclusively shows that any reasonable effort to get the facts would have disclosed these conditions. If he knew the facts and misrepresented them, he would of course be liable. If he did not know the facts, and represented to appellee that he did, he

would be liable to the same extent as if he had known the facts and misrepresented them.

Mr. Nakdimen had been engaged for many years as an investment banker. The appellee, according to the evidence, had great confidence in Mr. Nakdimen; not only did he trust him, but according to the evidence, he believed what Mr. Nakdimen said about the bonds and their value, and believed that if Nakdimen had made the investigation, he knew the value of the bonds. Appellee had been a customer of the bank for a number of years and, according to his testimony, which is not contradicted, he knew nothing about dealing in bonds.

Appellants name five questions which they say are involved in this case. We think, however, that all of them may be considered under two propositions; first, Did the appellants perpetrate a fraud in the sale of the bonds? If they did not, then there would be no liability. The second proposition is; Was the plaintiff's cause of action barred at the time the suit was begun?

Appellants contend that a decree in favor of appellee cannot be sustained upon his uncorroborated evidence. Appellee's evidence is corroborated in some respects by Mr. Nakdimen himself. He does not deny that he told appellee that the bonds were good. Not only that, but he now says that they were worth the price for which they were sold, in the face of the fact that the evidence shows the bonds were being offered at the time for fifty cents and there were no purchasers. It is undisputed that Nakdimen said he had made a thorough investigation; that in his sale to appellee he was making only a very small profit, and that he could at that time sell the bonds for par. The condition of the district and the default in payments are testified to by Mr. Moore and Mr. Barney, two lawyers of Texarkana, who knew all about the facts and whose testimony is not disputed. These witnesses are both men of high character, and from them the conditions could have been learned by Mr. Nakdimen before the sale of the bonds.

Appellants call attention to the case of *Hanger* v. *Evins & Shinn*, 38 Ark. 334. It is true that the court

said in that case that the purchaser had a right, when he made his contract, to demand an express warranty, and in the absence of a warranty he is presumed to rely upon his own judgment, but the court followed this statement with the following: "But if, in the making of the contract, the vendor or seller makes use of any artifice or device, or such fraudulent and false representations in regard to the material facts, of which he has special means of information, and knows the buyer is purchasing on the strength of his statements about matters of which he had peculiar means of information, and difficult of access to the buyer, and by such false and fraudulent representations, in such a matter material to the trade, he designedly prevents the purchaser from making examination and induces him to buy in ignorance of such defects, known to plaintiff; then the defendant would be entitled to be relieved to the extent of injury shown by the evidence to have been suffered by him by reason of such false and fraudulent representations."

In the instant case, according to the testimony of appellee, and not disputed by anyone, there was an express warranty. Nakdimen repeatedly, according to appellee's testimony, stated that the bonds were as good as gold, and that he would stand behind appellee and see that he did not lose a cent.

The next case relied on by appellant is *Catlett* v. *Bradley*, 185 Ark. 260, 47 S. W. 2d 15. That was a suit to cancel certain leases, and the court said: "As to the demurrer, it is argued that the allegations of the complaint were insufficient to show fraudulent misrepresentation in law. The complaint alleged in each case that the appellants represented to each grantor that he was signing a lease for oil and gas to the tract of land conveyed and persuaded them to sign an instrument which turned out to be a mineral deed and not an oil and gas lease." The court held that this was a sufficient allegation of fraud and deceit.

Appellants call attention to the case of *Francis* v. *Turner*, 188 Ark. 158, 67 S. W. 2d 211. It is there stated, among other things: "It is our opinion, accept-

ing at its face value the statements of the attorney relative to what occurred in his conferences with Mrs. Francis and Mrs. Purinton, he displayed a lack of candor and frankness, whether intentional or unintentional, which, in connection with the letters which Mrs. Turner had written, were calculated to and did deceive, those with whom he was dealing.''

Appellants call attention to some other authorities, but we do not think they support the contentions of appellants.

It is next urged that the evidence is insufficient to prove that I. H. Nakdimen made any false representations as to the drainage bonds. He unquestionably represented that they were good, at a time when he knew, or should have known, that the district had defaulted and that a receiver had been appointed, and if he had made a thorough investigation, he would have discovered that the market value was not more than fifty cents. Moreover, the coupons were clipped and Nakdimen gave credit to appellee for $632.50, and the appellee thought that the district had paid this interest, and he continued to think that until he had paid his note to the bank in full.

In the case of *Held* v. *Mansur,* 181 Ark. 876, 28 S. W. 2d 704, the court said: "The rule established in this state is that false statements of fact, intentionally made, to one who is ignorant of the quality or value of the property under consideration under such circumstances as indicate a purpose that such statements are to be relied upon, where the purchaser has no opportunity to examine the property, may be treated as an affirmation of fact and fraudulent. Where the vendor knows that the purchaser is wholly ignorant of the value of the property, and knows that he is relying upon his representations, the representations do not take the form of a mere expression of opinion, but are in the nature of a statement of fact. The reason is that the vendor knows that the statements he has made are untrue or are made in reckless disregard of the truth, and it cannot be doubted that he knows and believes that such statements

will have a material influence upon the purchaser." To sustain this rule, the court cited the following cases: *Carwell* v. *Dennis,* 101 Ark. 603, 143 S. W. 135; *Hunt* v. *Davis,* 98 Ark. 44, 135 S. W. 458; *Bell* v. *Fritts,* 161 Ark. 371, 256 S. W. 53; *Cleveland* v. *Biggers,* 163 Ark. 377, 260 S. W. 432; *Laney-Payne Farm Loan Co.* v. *Greenhaw,* 177 Ark. 589, 9 S. W. 2d 19, 73 A. L. R. 1117.

The court also said in *Held* v. *Mansur, supra*: "These cases all hold that, while ordinary statements of value of property are mere expressions of opinion on which the purchaser is not entitled to rely, yet statements of fact which affect the value of property, if false, and made for the purpose of inducing the purchaser to rely thereon, are false representations which will constitute fraud in law. The false representations may be established by positive and direct testimony, or by circumstantial evidence, or by both."

We think in the present case the false representations were established by a preponderance of the evidence, and there can be no question or doubt about the fact that the purchaser of the bonds relied upon the representations made by Mr. Nakdimen. He had been a customer of the bank for years, believed that Nakdimen knew the value of the bonds, believed that he had made a thorough investigation, and, but for this reliance on Nakdimen, would not have purchased the bonds.

The chancery court held that appellants were experienced dealers in municipal bonds and other securities, and that the appellee was inexperienced in such matters; that appellants made false representations to the appellee as to the value and safety of said bonds for the fraudulent purpose of inducing him to purchase them; that the appellants knew at the time they were made such representations were false; that appellee relied upon the superior knowledge of the appellants, and reposed trust and confidence in them, and in the representations made by them.

It is, however, earnestly contended by appellant that appellee's cause of action was barred by the statute of limitations of three years, and they correctly state

that where a party knows the statements to be false, there can be no fraud.

If the appellee knew the statements of Nakdimen were false, or knew all the facts himself, he could not recover. Even though a party's statements may be false and fraudulent, yet if the other party knows they are false or fraudulent, he would not be deceived, would not rely upon the statements that he knew were false, and would have no cause of action.

In the present case the evidence shows that appellee did not know that the statements were false. The undisputed evidence shows that he knew nothing about the facts and that he relied wholly upon the statements of Nakdimen. Even after appellee learned that a receiver had been appointed, Mr. Nakdimen, his banker, and one who had had much experience in the purchase and sale of bonds, told him that made it much better; that the district was careless and would not collect the taxes, but a receiver would collect them and he would get 10 per cent. instead of 6 per cent. Appellee continued to believe the statements of Nakdimen and to rely on them. He did not, at that time, believe that Nakdimen was guilty of any fraud, and these statements and representations with reference to the security were continued until after the appellee had paid his note to the bank in full. His investigation, however, finally convinced him that the representations and statements of Nakdimen were false, and that his security was practically worthless.

Section 8941 of Pope's Digest reads as follows: "If any debtor or debtors shall fraudulently abscond from any other state, territory or district to this state, without the knowledge of his, her or their creditor or creditors, such creditor or creditors may commence suit against such debtor or debtors within the times in this act, or any other acts of limitations now in force prescribed for limiting such action or actions, after such creditor or creditors may become apprised of such residence of such absconding debtor or debtors."

In construing § 4846 of Sandels & Hill Digest, which reads as follows: ''If any person, by leaving the county, absconding or concealing himself, or any other improper act of his own, prevents the commencement of any action in this act specified, such action may be commenced within the times respectively limited, after the commencement of such action shall have ceased to be so prevented,'' the court said: ''The words 'any other improper acts of his own,' would seem to be broad enough to cover cases of fraud. But aside from this statute, the result would be the same. It is the established rule of equity, as administered in the courts of the United States, that where relief is asked on the ground of actual fraud, especially if such fraud has been concealed, time will not run in favor of defendant until the discovery of the fraud, or until, with reasonable diligence, it might have been discovered.'' *McKneely* v. *Terry,* 61 Ark. 527, 33 S. W. 953. In support of the above rule the following cases are cited: *Kirby* v. *Lake Shore, etc., Railroad,* 120 U. S. 130, 7 S. Ct. 430, 30 L. Ed. 569; *Meador* v. *Norton,* 11 Wall. 442, 20 L. Ed. 184; *Prevost* v. *Gratz,* 6 Wheat 481, 5 L. Ed. 311; *Rosenthal* v. *Walker,* 111 U. S. 185, 4 S. Ct. 382, 28 L. Ed. 395; 2 Story Eq. Jur., § 1521a; *Veazie* v. *Williams,* 8 How. 134, 12 L. Ed. 1018.

The court, in *Conditt* v. *Holden,* 92 Ark. 618, 123 S. W. 765, 135 Am. St. Rep. 206, again announced the same rule and said: ''But, apart from the statute, and without it, it is generally held that where there has been a fraudulent concealment of a cause of action, the statute of limitations does not begin to run until the discovery of the fraud.''

The evidence in this case is sufficient, we think to justify the chancellor in holding that the fraud was concealed, and that the appellee's cause of action was not barred by the statute of limitations.

This court recently said: ''It is urged also that Leeper's claim is stale; that he has not been diligent, but Leeper's explanation is entirely tenable, at least not unbelievable, that is, to the effect that Smith has insisted that he keep the property, promising that he would ad-

just the price with him on the last payments. To argue that he should not have waited thereafter would be tantamount to arguing Smith's lack of honor and good faith. Perhaps he should not have relied upon this promise of Smith's, but should have proceeded at once with the suit, either to rescind or to recover his damages, but under the circumstances Smith may not properly urge that defense." *Smith* v. *Leeper,* 189 Ark. 1051, 75 S. W. 2d 1012.

Delay in commencing action is excusable where it was induced by the adverse party. No one can take advantage of a delay which he himself has caused or to which he has contributed, especially where actual hindrance has been caused by his fraud or concealment. 21 C. J. 343.

The chancery court entered a decree rescinding the contract of purchase and ordered the appellee to deposit in the registry of the court the McKinney Bayou Drainage District bonds and all interest coupons maturing on or subsequent to August, 1930, said bonds and coupons to be retained and held by the court for delivery to the defendants upon payment of judgment of this court, and entered a decree in favor of appellee against the City National Bank and I. H. Nakdimen in the principal sum of $21,988 together with interest thereon at the rate of 6 per cent. per annum from September 9, 1929, less the sum of $632.50, and amount of interest coupons maturing February 1, 1930, which have been paid by the City National Bank to the appellee making a total judgment of $31,816.65, and for all costs.

We think the evidence sustains the finding of the chancellor, and the decree is, therefore, affirmed.