FRANCIS *v.* TURNER.

4-3163

Opinion delivered November 13, 1933.

*S. S. Hargraves, Louis L. Cohen* and *Mann & Mann,* for appellant.

*Marvin B. Norfleet,* for appellee.

BUTLER, J. In March, 1929, Charles Turner died in St. Francis County, Arkansas, without issue, leaving surviving his widow, Mrs. Marcella E. Turner, and two sisters, Mrs. Alma T. Francis of Munson, Iowa, and Mrs. Sadie B. Purinton of Chicago, Illinois, the sole heirs at law. Soon after Mr. Turner died, his widow accompanied by H. A. Sulzer, went to Forrest City and consulted with an attorney, and after some discussion, at Mrs. Turner's suggestion, Sulzer was appointed administrator and gave bond as such with Mrs. Turner as a surety thereon. Having obtained the information that

Turner had some property in Mississippi, Mr. Sulzer and the attorney proceeded to that State where they discovered that Turner had on deposit $30,000 in a bank in Tupelo, Mississippi, and an additional sum of $316.68 accrued interest. On the day after their return to Forrest City, Mrs. Turner was informed of this, and on the same day she executed to the attorney a power of attorney to convey her interest in some property in Munson, Iowa, owned by her deceased husband in his lifetime. The attorney was further authorized to proceed to the residence of the two sisters for the purpose of securing their interest in the Turner estate. The attorney left on this mission and arrived in Munson, Iowa, on April, 1929, where he secured a deed from Mrs. Francis. He went on to Chicago, arriving there the evening of the next day, and on the day following secured a like deed from Mrs. Purinton. By these two deeds all the interest of these two ladies in the estate of the deceased, Turner, was conveyed to his widow in consideration of the sum of $3,000 in cash paid to Mrs. Purinton and the conveyance under the power of attorney to Mrs. Francis of the Munson. Iowa, property at the agreed value of $2,000 and $1,000 in cash paid to her.

Previous to these events no inventory has been filed, but soon after the return of the attorney to Forrest City with the deeds an inventory was filed. After the death of Turner, his widow wrote two letters to Mrs. Francis who immediately forwarded them to her sister in Chicago. The first letter, written March 23rd, requested information as to the value of her husband's property in Iowa, which was a store building which had been renting for $40 per month, and in this letter a suggestion was made that the sisters might take it as their share in the estate. The letter indicated that the value of the estate was small. The next letter was written on April 10th, following, and contained expressions in line with the letter of March 23rd. The general effect of these letters was that the widow found herself left with very limited resources. When these letters were written, Mrs. Turner did not know of the large sums on deposit in Mississippi, but she

learned this in a day or two after her second letter was written and took no steps to correct the impression her letters were calculated to convey.

This suit was begun by the sisters filing a complaint in the St. Francis Chancery Court alleging that the deeds had been secured through false representations regarding the value of the estate which induced them, with the information they had previously received from Mrs. Turner, to believe that the estate was much smaller than it really was; that the representations made were relied upon, and in reliance upon the same the deeds were executed. Certain allegations were made whereby liability against the administrator in his settlement was sought to be established. Testimony was adduced for the plaintiffs and the defendants, Mrs. Turner and the administrator, and at the trial the court found that the conveyances were not procured by fraud, the complaint was without equity, and the same was dismissed. The decree, in so far as it related to the administrator, is not challenged by the appeal.

To support the finding and judgment of the trial court in upholding the conveyances attacked, appellees invoked two familiar principles recognized by this court from the earliest times: (1) the finding of the chancellor is highly persuasive and will be sustained unless it is against the preponderance of the evidence, and (2) that, in cases where fraud is alleged as a foundation for a cause of action to entitle the party asserting it to the relief prayed, the fraud must be clearly proved.

With these fundamental rules in mind, we proceed to an examination of the evidence relating to the procurement of the deeds questioned, viewed in the light of the interest or bias of these witnesses to be inferred and the attendant circumstances established in connection with another settled principle, namely, that an attorney for an estate represents the heirs and distributees and legatees to the extent that it becomes his duty, where the value of the estate is material to those interested in dealing between themselves or others, not only to refrain from making any misrepresentation or concealment, but

to also fully disclose the value of the estate and its probable assets, so that all interested may exercise an informed judgment. 23 C. J. 1170, § 387.

The dealings of the attorney with the two sisters may be treated as a single transaction in so far as the representations made by him in consummating the purpose of his visits to them is concerned. As to this the evidence is in conflict. The two sisters and Mrs. Purinton's attorney who was present when her deed was procured, testifying on the part of the appellants, were sharply disputed by the testimony of the Arkansas attorney and his wife who accompanied him on his journey. These five persons were the only witnesses to the transactions. The testimony of the witnesses for the appellants tended to establish these facts: that the attorney from Arkansas correctly advised them regarding the law of descent and distribution in Arkansas, but did not advise them of the items of property going to make up the *corpus* of the estate, stating that the value of the estate was about $12,000. He offered them $3,000 each for their respective interests, stating that there would be some expense incurred in the course of the administration, and that, after the debts had been paid, some time would elapse before the distribution was ordered, and that at the time some of the assets in the State of Mississippi were being withheld from the administrator for some reason then unknown to him.

The attorney for Mrs. Purinton advised that perhaps it might be well to check up the statements of the visiting attorney, but Mrs. Purinton declined this advice because of her knowledge of the reputation of Mrs. Turner and relied on the statements of the attorney as to the value of the estate.

The testimony of the Forrest City attorney, in which he was corroborated by his wife, tended to dispute that of Mrs. Francis, Mrs. Purinton and the latter's attorney, and was to the effect that he stated that, after the widow's allowance under the Arkansas statute had been deducted and expenses paid, the estate would approximate about $15,000 in value, and after $3,000 was

paid to each of the sisters about $9,000 would be left for the widow from the one-half of the estate which the sisters would inherit: quoting from the attorney's testimony, "I told her, from the figures I had then and estimating the estate and considering the statutory allowance of the widow in Arkansas the expenses of the administration and such bids as I had heard of, that the half they (the sisters) were interested in under the laws of Arkansas to be worth about $15,000 and with the $6,000 paid to them there would remain to the widow about $9,000." His testimony was further to the effect that, disregarding the advice of her attorney, Mrs. Purinton (the deed from Mrs. Francis having already been obtained) accepted the proposition made on the ground that she never expected to go to Arkansas, and that "a bird in the hand was worth two in the bush." In his testimony, he did not claim that he had revealed the two cash items, one of $5,107.89 then in the bank at Forrest City and one of $30,316.68 then on deposit in the bank at Tupelo, Mississippi, these two items aggregating the sum of $35,424.57 cash on hand. He contented himself with the statement professed to have been made to Mrs. Purinton and her attorney that "I told him (the attorney) that I considered the half the sisters were interested in under the laws of Arkansas to be worth something like $15,000."

It was testified to by Mrs. Francis and Mrs. Purinton that they believed in, and relied upon, the statements they testified that were made to them as to the value of the estate, and, acting on this information, they executed the deeds; that they would not have done so had they been advised of the true value of the same.

Soon after the return of the attorney to Forrest City with the deeds of the two sisters, an inventory of the estate was filed for the first time disclosing that the value of the estate, inclusive of the store house in Iowa, amounted to the sum of $41,545.57. Of this amount $35,424.57 was cash on hand. It was shown that the deceased owed no personal debts, and that the net value of the estate was the sum mentioned, less any inheri-

tance tax which might be due the State and the expenses incident to the administration.

It was, and is, the contention of the appellees that the attorney who procured the deeds from Mrs. Francis and Mrs. Purinton, was not the attorney representing the estate or the administrator thereof in his official capacity; that he at no time represented the administrator as such, but only as his personal attorney and that he was the attorney for Mrs. Turner. The record, however, discloses that he did in fact represent the estate, and that he was paid out of the estate his fees as attorney. It may be true that he considered himself in the negotiations with the two sisters as the attorney merely of Mrs. Turner and might have, and doubtless did, overlook the fact that he was also the attorney for the estate, owing to the heirs the duty of making full disclosures of the value of the estate. In law he occupied the same position to them as he did to Mrs. Turner which was a position of trust with respect to all those interested in the estate.

The witnesses who testified as to the transactions between Mrs. Francis and Mrs. Purinton on the one hand and the attorney from Arkansas on the other by which the deeds were procured, may all be said to be interested in the result of this litigation or biased in favor of one or other of the parties. As far as their testimony is concerned, it might be said to be evenly balanced in respect to the truth of the facts narrated by them. But, if the testimony on behalf of the appellants is accepted as true, and if indeed the attorney of Mrs. Turner did inform Mrs. Francis and Mrs. Purinton that the half of the estate to which they would be entitled was worth about $15,000, this did not correctly state the amount to which they were entitled by at least $3,500, and when the value of the Iowa property is added, by $5,500—no insignificant sum in these times. Except for some items of small value, as we have seen, the principal value of the estate consisted of cash, stock of merchandise $750, personal property $1,000 and land in St. Francis County valued at $2,371 and a store building in

Iowa worth $2,000, so that there was nothing problematical about its value. But the statements of the appellants' witnesses are reinforced by cogent circumstances. The fact that Mrs. Turner had, just a short time before the advent of the Arkansas attorney in Iowa and Illinois, conveyed the impression to the two sisters that she was a poor woman, and that she might not have money enough to pay the expense of a visit to them which she desired to make, and after learning of the value of the estate made no effort to undeceive them, but at once sent her attorney to buy their interest, the fact that no inventory of the estate had been filed until after the procurement of the deeds, and the true value of the estate, confirm and support the statement they made that they were not correctly advised. The evidence shows that there was no intimate relationship or association between Mrs. Turner on the one hand and the sisters of her deceased husband on the other. They were comparative strangers. One of the sisters had visited Mr. and Mrs. Turner only once in a quarter of a century and the other not at all, and there was no reason to suppose that the sisters of Mr. Turner would feel it their duty to give to Mrs. Turner a large sum of money. It is against ordinary experience and observation to believe that they would part with an estate valued at practically $20,000 for the sum of $6,000, and it must be remembered that at no time in the testimony of the attorney did he admit or say that he ever at any time told them of the amount of actual money on hand.

It is our opinion, accepting at its face value the statements of the attorney relative to what occurred in his conferences with Mrs. Francis and Mrs. Purinton, he displayed a lack of candor and frankness, whether intentional or unintentional, which, in connection with the letters Mrs. Turner had written, were calculated to and did deceive those with whom he was dealing. Mrs. Francis and Mrs. Purinton must have relied on the statements of the attorney and the letters they had received from Mrs. Turner, and they had the right, con-

sidering the position which the attorney occupied, to rely upon his statements. It is our opinion that the finding of the court below is contrary to the preponderance of the evidence. We think, also, the circumstances so persuasively support the evidence adduced by the appellants that it is sufficient to preponderate in favor of the appellants to a degree sufficient to satisfy the rule that proof of fraud must be plainly shown.

But the statement is made by the appellees that, even though the testimony of Mrs. Francis and Mrs. Purinton be accepted as true, they were not deceived and were paid a sum equal to at least one-half of the value of the estate. They argue that, as the thirty thousand odd dollars was on deposit in the State of Mississippi, it became the absolute property of the widow by virtue of the laws of that State, and therefore was not a part of the estate of Turner to be distributed under the laws of Arkansas, but, by virtue of the Mississippi laws, was to be distributed under the laws of that State.

While the answer filed by the appellee alleged her ownership of the deposit under the laws of the State of Mississippi, there was no evidence adduced on this question except a reference by her attorney, when testifying, to the effect that, in consulting with the legal department of the bank in Tupelo, Mississippi, where the deposit was, that department regarded Mrs. Turner as being entitled to the deposit under the laws of that State. We have carefully searched the record and find that this reference and the letter from the bank to the attorney, introduced by him as an exhibit to her testimony, were the only references made to the claim of ownership set up in appellee's answer. On the contrary, the inventory of the estate of the intestate was introduced in evidence as an exhibit to the testimony of one of the witnesses, which shows that the deposit was listed as a part of the assets of the estate, and it was proved that Mrs. Turner consented to the withdrawal of the money from the Mississippi Bank by the administrator of the estate of her deceased husband. These proved facts made a *prima facie* showing that the $30,000 deposit was a part of the Turner estate.

The question really in issue, and the one which the trial court's "opinion and statement of facts" disclosed was presented to, and considered by it, was whether or not the deeds involved were void because of fraud in their procurement, and, in the absence of proof that the deposit was localized under the laws of Mississippi within the meaning of her statutes as construed by the court of that State, the deposit in so far as it affects that question, was treated as if it was, in fact, the property of the estate as shown by the inventory.

It follows that the judgment of the trial court must be reversed, and the cause is remanded with directions to cancel the deeds from Mrs. Francis and Mrs. Purinton to Mrs. Turner, and for further proceedings according to the principles of equity and not inconsistent with this opinion.