Garland F. MORRIS, Jr. *v.* Sophia R. CULLIPHER,
Executrix of the Estate of Garland F. Morris, Sr., Deceased

91-42                                        816 S.W.2d 878

Supreme Court of Arkansas
Opinion delivered October 14, 1991

*David J. Potter*, for appellant.

*Hubbard, Patton, Peek, Haltom & Roberts*, by: *George L. McWilliams* and *Randall D. Goodwin*; and *Smilie Watkins*, for appellee.

ROBERT L. BROWN, Justice. This appeal is a probate matter in which the appellant, Garland F. Morris, Jr., contests the

performance of the appellee, Sophia R. Cullipher, as executrix of the decedent's estate on various grounds, including breach of fiduciary duty. The probate court entered an order denying relief on September 13, 1990. Morris Jr. now appeals and raises five points for reversal. There is no merit in any of the arguments, and we affirm.

The decedent, Garland F. Morris, Sr., died testate in Garland, Miller County, Arkansas on January 7, 1985. He was survived by Cullipher, who was his second wife and who has since remarried, and by Morris Jr., who was his only son by a previous marriage. Morris Sr. divorced his first wife in 1966 and married Cullipher that same year. Prior to the divorce Morris Sr. had lived in Texas but upon remarrying, he and Cullipher moved to Garland. For the duration of their marriage, they farmed 1,123.22 acres of land in Miller County — 370 acres were owned solely by Cullipher, 633.22 acres were owned as tenants by the entirety, and 120 acres were owned solely by Morris Sr. As they made money, they bought certificates of deposit from four Texas banks in their joint names. They also held their Arkansas farm operation as tenants by the entirety and used the money derived from that operation to buy farm equipment and livestock.

Morris Sr. died in 1985, and his will was admitted to probate. Cullipher was appointed executrix of his estate, which was valued at approximately $295,000. The jointly held Texas certificates of deposit which Cullipher determined passed to her by right of survivorship under Arkansas law were valued at $268,848. Cullipher took ownership of those certificates and transferred them to Arkansas. More than two years later on November 17, 1987, Morris Jr. petitioned to have Cullipher removed as executrix. Hearings on this petition and other matters relating to discovery and the administration of this estate were held with the final hearing commencing on May 3, 1990. The probate judge denied the petition and entered his order with accompanying findings of fact and conclusions of law on September 13, 1990.

## I.

## REMOVAL OF EXECUTRIX

Morris Jr. urged the probate judge to remove Cullipher for multiple reasons. His first argument was premised on a perceived

failure on her part to prepare inventories and accountings for the estate in a satisfactory manner. The facts, however, undermine Morris Jr.'s assertions. On April 29, 1985, Morris Jr. waived the necessity for an inventory and accounting. A year later on May 22, 1986, he changed his mind and withdrew his waiver. He further petitioned to compel Cullipher to file the documents. The probate judge ordered her to do so on August 11, 1986, but directed that the documents not be filed as part of the probate clerk's record. Cullipher proceeded to prepare and send an inventory and accounting to counsel for Morris Jr. within thirty days of that order. She then filed amended and supplemental accountings on March 7, 1988, and November 28, 1989. On March 30, 1990, she filed a comprehensive accounting and amended inventory. The comprehensive accounting replaced previous accountings filed. On May 1, 1990, she filed a supplemental accounting.

We have held that where there is substantial compliance with the executrix's obligation to file an inventory and accounting and no evidence of wrongdoing, we will deny relief for a fiduciary breach. *See Petty* v. *Lewis*, 285 Ark. 3, 684 S.W.2d 250 (1985). Here, it is clear from the above that Cullipher did prepare and furnish accountings as well as an inventory after Morris Jr. withdrew his waiver. Although Morris Jr. contests the sufficiency of these documents, the probate judge found no deficiency in Cullipher's performance in this regard. We agree and affirm the probate judge's ruling.

Morris Jr. also presses the point that a fiduciary breach occurred because Cullipher refused to comply with the decedent's "desire" in his will that Cullipher and Morris Jr. engage in joint farming operations. This language is clearly precatory and, as such, is ineffective to dispose of property. In addition, the Arkansas farm passed to Cullipher by right of survivorship, and, therefore, was not affected by language in the will. *See Estate of Wells* v. *Sanford*, 281 Ark. 242, 663 S.W.2d 174 (1984).

Nor does the will direct or require Cullipher to make disbursements of money to Morris Jr. There is only the "desire" that Cullipher do so which, again, is precatory. Allegations were also made regarding Cullipher's administration of the Texas C.D.'s and claims against the estate. These issues are discussed

more fully below but, in sum, we agree that evidence of wrongdoing is lacking, as the probate judge found. Finally, Cullipher's failure to close out the estate has been due in no small part to the multiple lawsuits prosecuted by Morris Jr. against Cullipher and the estate. There was no error in the probate judge's refusal to find any breach of fiduciary duty.

## II.

## DISCOVERY RESTRICTION AND CONTINUANCE

Though the original petition for removal of Cullipher was filed by Morris Jr. on November 17, 1987, the trial on the petition did not commence until March 16, 1990. No discovery had been conducted by Morris Jr. at the time the trial commenced. The probate judge recessed the trial on March 19, 1990, until May 3, 1990, and subsequently entered a scheduling order on March 27, 1990, which mandated preparation of the comprehensive accounting and inventory and which contemplated additional discovery pertaining to the bank accounts and C.D.'s. On March 30, 1990, Cullipher filed a comprehensive accounting and inventory. On April 12, 1990, Morris Jr. filed requests for production of business documents regarding the decedent's farm operation going back twenty-three years, which were to be furnished in five days. The ostensible reason for the request was to trace the title of the property to determine what was individually owned by the decedent or jointly owned. On May 1, 1990, the probate judge entered a protective order denying the expansive discovery, and on July 30, 1990, the probate judge struck subsequent discovery which had been served by Morris Jr. on Cullipher. (Cullipher contends in this regard that most of the title records to personal property were provided to Morris Jr. in advance of the May 3, 1990 hearing.) When the trial reconvened on May 3, Morris Jr. moved for a continuance on the basis that he had not had an opportunity to review all of the provided material. The motion was denied as untimely.

Lack of diligence is a factor to consider in denying a continuance. *Mixon* v. *Chrysler Corp.*, 281 Ark. 202, 663 S.W.2d 713 (1984). Moreover, a trial judge has broad discretion in matters pertaining to discovery, and that discretion will not be second-guessed by this court absent abuse of discretion which is prejudicial to the appealing party. *See Bolden* v. *Carter*, 269 Ark.

391, 602 S.W.2d 640 (1989); *Marrow* v. *State Farm Ins. Co.*, 264 Ark. 227, 570 S.W.2d 607 (1978). Also, when the continuance is based on a request for additional discovery, the appellant must not only show that there has been an abuse of discretion, but also that the additional discovery would have changed the outcome of the trial. *See Pinkston* v. *Lovell*, 296 Ark. 543, 759 S.W.2d 20 (1988). We hold that the probate judge was correct, and that there was no abuse of discretion regarding discovery and the continuance.

## III.

## PAYMENT OF CLAIMS

Morris Jr. next contests the procedure by which Cullipher paid claims filed against the estate. Specifically, he argues that certain claims timely presented as debts of the decedent were not filed with verifications and allowed by the court prior to payment. The Statute of Nonclaim is not raised by the appellant as an issue.

■ It is true that the probate judge did not allow these claims prior to their payment by Cullipher. But the judge approved their payment after the fact in his September 13, 1990, order. In the past we have held that substantial compliance with the formalities for filing and approving claims is sufficient under certain circumstances. *See Merritt* v. *Rollins*, 231 Ark. 384, 329 S.W.2d 544 (1959) (registered mail of claim to personal representative as specified by statute not required when claim is personally delivered). Because of the probate judge's subsequent approval of these claims, we hold that there was substantial compliance in this case.

Morris Jr. further contests payment of significant legal and accounting fees as administrative expenses of the estate. The authorizing statute reads:

> (b) Claims for expenses of administration may be allowed upon application of the claimant or of the personal representative, or may be allowed at any accounting, regardless of whether or not they have been paid by the personal representative.

Ark. Code Ann. § 28-50-105(b). Morris Jr. maintains that the fees claimed and paid were excessive in view of the size of the

estate.

■ The fees are high — $81,932 for legal fees and $23,450 for accounting fees, according to Morris Jr. — but the value of such services rendered is primarily a matter within the discretion of the probate judge, and we will not reverse that finding absent an abuse of discretion. Again, we note, as did the probate judge, that there were "numerous" lawsuits brought against Cullipher and the estate by Morris Jr. We are not privy to precisely what those lawsuits entailed, since they are not part of the record. The probate judge, however, found that they were suits against Cullipher in her official capacity, and there is nothing before us to counter that. We also agree with the probate judge that in the instant case Cullipher's actions, which are now contested by Morris Jr., were taken in her official capacity. The legal defense of lawsuits brought by Morris Jr. as principal descendant of the testator as well as his demand for comprehensive accountings undoubtedly enhanced the administrative claims.

■ It is true that had the statutory formula been used for the award of attorney's fees, the award would have been much less than the $81,932 paid in legal fees, even if part of the decedent's property passing to Cullipher by operation of law had formed part of the estate. *See* Ark. Code Ann. § 28-48-108(d)(1987). But, the probate judge has authority to approve legal fees in excess of the statutory legal fees under § 28-48-108(d) and did so in this case. He further was authorized to approve accounting fees under Ark. Code Ann. § 28-48-108(e) (1987). For the reasons set out above, we hold that his ruling on the fees did not constitute an abuse of discretion.

## IV.

## CHOICE OF LAW

The choice of law question lies at the heart of Morris Jr.'s appeal. Specifically, there is the issue of whether the Texas C.D.'s legitimately passed by right of survivorship under Arkansas law or whether one-half of the C.D.'s should have become part of Morris Sr.'s estate under Texas's community property law. Morris Jr. argues vigorously that the C.D.'s were movable personal property and, as such, the law of the situs state — Texas — should apply. Texas, unlike Arkansas, requires a separate

writing signed by the parties evidencing a survivorship intent in order for the C.D.'s to pass by operation of law. *See* Texas Probate Code Annotated § 439 (Vernon, 1980). Under Arkansas law no separate writing is required for the C.D.'s to pass automatically to the survivor at time of death. *See* Ark. Code Ann. § 23-32-1005(3) (1987). And Cullipher contends that the applicable law for the C.D.'s is Arkansas law which is the law of the domicile of the decedent at the time the C.D.'s were acquired.

There is no question but that the Texas C.D.'s were placed in the joint names of Morris Sr. and Cullipher while husband and wife and were purchased either with funds from the Arkansas farm operation or from Morris Sr.'s separate property. The C.D.'s were purchased and held in Texas. The decedent also had other Texas contacts, but he lived in Arkansas and was living in Arkansas at the time the C.D.'s were purchased. We turn to Leflar on Conflicts for resolution of the issue and find a legitimate policy in favor of applying the law of the domicile:

> As between the spouses on divorce, or [a]s between a surviving spouse, . . . the whole of their movable property will be most fairly divided if the distribution can be in accord with some single basis of marital ownership and the rule which refers the question to the law of the domicile is the only one which can approximate this result. Otherwise the place of acquisition of each item of personalty, including choses in action, acquired by either of the spouses will have to be remembered, and its law studied, to learn what marital property interests exist in the item, though it may have long since been intermingled with the mass of the spouses' personalty at their domicile.

*Id.* at 646. *See also Restatement of Conflict of Laws* § 290 (1934). R. Leflar, *American Conflicts Law,* § 233, p. 647 (1986). Leflar further states that the great body of American authority favors the law of the domicile at the time the marital property is acquired. *Id.*

Morris Jr. cites a 1933 case in support of his position that Texas law should apply. *See Francis* v. *Turner,* 188 Ark. 158, 67 S.W.2d 211 (1933). In *Francis* our court did appear to honor Mississippi law to determine title to a Mississippi bank account, though the decedent had been a resident of Arkansas. We believe

*Francis* is distinguishable on its facts, since the widow in that case agreed that the bank account should pass through the estate. That is not the situation in the case before us. Rather, Cullipher exerted ownership by right of survivorship. This court did indicate that had a localized Mississippi bank account been properly proven, Mississippi law would have been applied. This is contrary to Leflar on Conflicts, as noted above, and our holding today. To the extent that *Francis* v. *Turner* stands for the proposition that the marital property law of the situs as opposed to the domicile applies to movable personal property, we overrule it.

Along this same line Morris Jr. argues that certain farm equipment and livestock should have passed through the estate and not to Cullipher by right of survivorship. It was undisputed, though, that this personal property was either purchased with the proceeds from the Arkansas farm operation which Cullipher and Morris Sr. jointly held as husband and wife or was given to them as tenants by the entirety. This court held early on that a tenancy by the entirety could exist in personal property. *See Dickson* v. *Jonesboro Trust Co.*, 154 Ark. 155, 242 S.W. 57 (1922). We have further held that personal property acquired with the proceeds of land held by the entirety also constituted an estate by the entirety. *See Bostic* v. *Bostic Estate*, 281 Ark. 167, 662 S.W.2d 815 (1984). It was, therefore, appropriate for the farm equipment and livestock to pass to Cullipher by operation of law.

V.

For his final point, Morris Jr. requests review of his petition for affirmative relief filed on April 12, 1990, where he asks for penalties, interest, and rents on property which should be included in the estate together with attorney's fees. Since we hold against the appellant on all points, we find it unnecessary to consider this argument. Morris Jr. further asked in that petition for the inclusion in the estate of a vendor's lien note originally held jointly by Morris Sr. and Cullipher. In Arkansas there is a strong presumption that a promissory note held by husband and wife was held as tenants by the entirety. *See Ramsey* v. *Ramsey*, 259 Ark. 16, 531 S.W.2d 28 (1985). There is nothing to suggest otherwise in this case.

Affirmed.