Aletha ROLLINS and James Lee Silliman, Co-executors of the
Carrie Lee Sillman Estate  *v.*  V. Benton ROLLINS

CA 05-693                                              224 S.W.3d 554

Court of Appeals of Arkansas
Opinion delivered January 25, 2006

*Robert S. Laney, P.A.*, by: *Robert S. Laney*, for appellants.

V. Benton Rollins, *pro se.*

ANDREE LAYTON ROAF, Judge. Aletha Rollins and James
Lee Silliman appeal the trial court's award of $24,000 in
attorney's fees to their brother, appellee V. Benton Rollins, who
served with them as co-executors of their mother's estate and also as
attorney for the estate. On appeal, Aletha and James assert that the
$24,000 attorney's fee award was excessive. We affirm.

V. Benton Rollins filed a petition to admit the Last Will and
Testament of his mother, Carrie L. Silliman. The will was admit-
ted to probate on October 2, 1997, and Benton along with his
siblings, Aletha and James, were appointed co-executors of the
estate. Benton, an attorney, also provided some legal services for
the estate, including the following: preparing and filing the cus-

tomary petitions, notices, and orders for the probate clerk; hiring and consulting with the CPA who prepared the estate tax and the estate income tax returns; selling land, stocks, and bonds to pay the estate tax liability; corresponding with oil and gas companies about leasing his mother's royalty interest; and distributing the assets of the estate to the devisees. Aletha, James, and Benton hired Charles Kriehn, a CPA, to prepare the estate tax return. On June 9, 1998, Kriehn filed a tax return on behalf of the estate. The return indicated that the estate owed taxes in the amount of $268,295, and the portion of the return listing the incurred expenses for administering the property showed executors' fees of $27,116, which were authorized by court order in July 1998 and shared equally by the three co-executors, and accountant's fees of $5,000. There was no listing of any attorney's fees — estimated, agreed upon, or paid. Some stocks and bonds were sold in order to pay the estate taxes.

On February 4, 1999, Benton filed a petition for approval of final distribution and discharge of the personal representatives; nothing else was filed with the probate court until November 2004 when Benton filed for allowance of attorney's fees. The petition requested the statutory maximum of $34,500 but also claimed that he had informed Aletha and James that he would accept a reduced fee of $24,000 if paid within twenty days of the petition's filing. Aletha and James filed objections to the allowance of attorney's fees, claiming that the fee request was excessive and not commensurate with the value of Benton's legal services.

Benton did not prepare a sworn fee petition listing such things as his hours, hourly rate, and the time and effort he put into performing work for the estate. Instead, at the hearing, the trial court allowed Benton to testify under oath regarding his services for the estate. The trial judge also indicated that she was in possession of the court file, which reflected some of the work that he did.

Benton testified that the bulk of his work was done in the first year of the probate proceedings but that he had performed work over several years. He claimed that the court's file was self-explanatory but that it did not provide an accurate representation of all the work that had been done and that he was in possession of a file of all the work that he did after the first year.

Benton testified that he had been in practice for thirty years and that he was experienced in the area of estate law and had handled 200 to 250 estates. He stated that it had generally not been

his practice to keep time records in these cases but that he had used the statutory fee as his maximum and his guideline.

Benton estimated that he had performed "somewhere in the neighborhood" of 140 to 160 hours of work, and that his hourly rate at the time was $160 an hour. He stated that his hourly rate was reasonable due to his thirty years of experience. In providing a summary of the work he performed for the estate, Benton claimed that it took him approximately two hours to prepare the petition and open the estate, one hour to prepare the order admitting the will to probate and appointing him and his siblings as co-executors, one half hour or less to prepare the acceptances of appointment, five hours to file a petition for allowance and payment of fees as a personal representative because it involved consultation with the CPA, no more than an hour to prepare an order awarding fees to the executors, one hour to prepare a petition for approval of final distribution and discharge of the personal representatives, one half hour to prepare the receipt of the distributee, and a little less time to file similar documents from the First Baptist Church and the Ouachita County Library, for a total of approximately seventeen hours. In addition, Benton claimed that he did other work including discussing with his siblings which assets to sell, meeting the requirements for companies to sell some of the estate stocks and bonds, negotiating to sell some land, and corresponding with oil and gas companies about leasing some oil and gas royalties.

Benton claimed that he did not consider the estate to be closed after February 1999 because the family had not dealt with the continuing oil royalties but admitted that Aletha had handled all of the oil royalties since 1999. He also stated that he considered all of the work he did to be that of an attorney as opposed to an executor, although all three co-executors received an equal share of the executor's fee. In addition, he stated that there were no unusual or extraordinary things involved in managing the estate. Benton also testified that he believed it was reasonable to submit a fee for the maximum amount although he believed that amount was a little high but claimed that he tried to compromise by offering to accept a reduced fee. He claimed that the lower fee would be too low if Aletha and James had not been family.

Benton also stated that the estate had a tax liability of $268,295 and testified that an attorney's fee was not included on the tax return because they had not agreed upon a fee. He agreed that some figure should have been included on the return because

it would have resulted in a deduction to the estate taxes and that he was probably at fault for not including a fee. However, he asserted that although most of the work had been performed within the first year, he knew there was still work to be done, mainly involving the oil royalties. Benton concluded his testimony by admitting that he never discussed attorney's fees with Aletha and James because he knew that when he asked for fees "there was going to be problems because they didn't feel like they would owe me an attorney's fee since it was family."

Mr. Kriehn, the accountant, testified that he did not recall discussing attorney's fees with anyone but that any amount would have resulted in a reduction in the estate tax owed. He also testified that he did not know of any way to amend the estate tax return after three years. He stated that he was still filing income tax returns for the estate on annual oil royalty income of approximately two to three thousand dollars and that it would be possible to deduct attorney's fees on these tax returns.

James testified that he, Aletha, and Benton never discussed attorney's fees. He stated that he believed that there would be no attorney's fees when the estate tax return was filed in 1999 and that the return did not include an amount for attorney's fees although most of the legal work had been done at that point. He objected to the amount Benton requested for fees based upon the amount of work he performed as an attorney for the estate. While James agreed that Benton prepared and filed court documents, wrote some letters, and prepared some deeds, he was unaware of anything else that Benton did as an attorney for the estate.

In announcing her decision, the trial court declared that, unfortunately, many people do not believe that attorneys are entitled to payment for the work they do as attorneys. She stated that she had no evidence to dispute that a fee of $160 an hour was a reasonable and customary fee, and awarded Benton $24,000 for 150 hours, based upon his estimate of having performed between 140 to 160 hours of work on the estate. She accepted Benton's testimony that it was a reasonable and customary fee for probate work done in Ouachita County.

On appeal, Aletha and James argue that the attorney-fee award was excessive pursuant to the factors set out in *Chrisco v. Sun Industries, Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990). They contend that Rollins could not have spent more than fifty hours on the estate, that he could only come up with seventeen and one-half

hours of work in his testimony, and that the trial court completely ignored these facts and accepted Rollins's guess of 160 hours spent on the case. They contend that Rollins's failure to include any amount for attorney's fees on the estate tax return reflected a lack of experience and ability, or a plan to trick his siblings at their expense. They contend that the estate would have saved over $10,000 in taxes had an attorney fee of $24,000 been listed on the return.

Probate cases are tried de novo on appeal, and this court does not reverse the findings of the trial court in probate matters unless they are clearly erroneous, giving due deference to its superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. The value of services rendered to an estate is primarily a factual determination to be made by the probate judge, and the appellate court will not reverse his decision where it is not clearly erroneous. *Adams v. West*, 293 Ark. 192, 736 S.W.2d 4 (1987). Further, a fee award for services rendered to an estate is primarily a matter within the discretion of the probate judge, and this court will not reverse such an award without finding an abuse of discretion. *Morris v. Cullipher*, 306 Ark. 646, 816 S.W.2d 878 (1991), *see also Bailey v. Rahe*, 355 Ark. 560, 142 S.W.3d 634 (2004). Unless otherwise contracted with the personal representative, heirs or beneficiaries of an estate, compensation for an attorney who performs legal services for the estate is governed by Ark. Code Ann. § 28-48-108(d)(2) (Repl. 2004) based on the total market value of the real and personal property reportable. However, under Ark. Code Ann. § 28-48-108(d)(3), the court can determine that the schedule of fees can be either excessive or insufficient under the circumstances and allow the attorney a fee commensurate with the value of the legal services provided.

While there is no fixed formula in determining the excessiveness or insufficiency of attorney's fees, courts should be guided by certain recognized factors including the following: the experience and ability of the attorney; the time and labor required to properly perform the legal services; the amount involved in the case and the results obtained; the novelty and difficulty of the issues; the customary fees for similar legal services in the locality; whether the fee is fixed or contingent; the time limitations imposed by the client; and the likelihood, if apparent to the client, that the employment will preclude other employment by the lawyer. *Chrisco, supra.* The reviewing court will usually defer to the

superior perspective of the trial judge in assessing the applicable factors. *Id.* In *Bailey, supra,* the supreme court reversed and remanded a reduced attorney fee award where the trial court did not provide sufficient reasons for reducing the award.

In *Scott v. Estate of Prendergast,* 90 Ark. App. 66, 204 S.W.3d 110 (2005), this court considered an award of attorney's fees for probating a decedent's estate. The attorney in *Scott* appealed an award of only $4,166.25 after he had petitioned for a fee of $32,623.90. In reliance upon *Chrisco, supra,* and *Bailey, supra,* this court, because it was unable to discern on what basis the fee award was made, reversed and remanded to the trial court for it to analyze the award in accordance with the *Chrisco* factors and to make findings sufficient for a review of the award. This court also reversed and remanded the trial court's award of $7500 in attorney's fees for guardianship work and probate of an estate where the trial court failed to differentiate between the guardianship and probate matters or to consider the factors set forth in *Bailey, supra,* and where it was impossible to discern how the trial court arrived at the estate fee or what it considered to be assets of the estate. *See Monk v. Griffin,* 92 Ark. App. 320, 213 S.W.3d 651 (2005).

With these precedents in mind, we consider the argument made by Aletha and James. They contend that the fee award was excessive based upon their assessment of the time that Rollins could have spent in handling the estate, and the facts that he failed to list an attorney's fee on the estate tax return and waited five years later to petition for a fee. They do not assert that the trial court failed to consider the proper factors in making the award but instead question Rollins's conduct and the credibility of his testimony presented in support of the fee petition.

In considering the award, the trial court specifically referred to *Bailey, supra,* and advised Rollins that he had the burden of proving the reasonableness of his fee request. The trial court stated that although it was a guardianship case, *Bailey* had been applied by this court in a probate case. The trial court went on to outline the factors to be considered in determining the reasonableness of Rollins's fee. In the fee-award order, the trial court stated in pertinent part:

> Petitioner is an experienced attorney in handling the probate of estates having done some 150 in his 30 years of practicing law. It is not his practice to keep detailed time records of his work in

probating estates rather using the statutory fees set forth in A.C.A. sect. 28-48-108 as a guideline in determining his fee. However, in reviewing his file in preparation for this hearing he estimated that he had performed 140 to 160 hours of work from September of 1997, to the present [including the additional time to be incurred in closing the estate]. His hourly rate during most of this period was $160 per hour which was in line with what other attorneys in the area charged for this type of work.

Based on the size of the estate, the experience of petitioner, the number of hours spent working on the estate, and the customary charges of other attorneys in the area for similar work, the Court is of the opinion that a fee of $24,000 is quite reasonable.

Under *Bailey,* the trial court is required to consider the *Chrisco* factors and make findings with sufficient clarity that the reasoning for the award of an attorney fee is discernible by the reviewing court. This court recently applied the principles set forth in *Bailey* and *Chrisco* in a case involving inadequate findings to support an award of fees for probating an estate, *see Scott, supra.* However, in the case before us the trial court was well aware of the factors to be considered, recited the factors in open court, and advised Rollins that he had the burden of proving that the fees he requested were reasonable. The order entered recites the factors that the trial court took into consideration in making the award, which was approximately one-third less than the amount authorized by Ark. Code Ann. § 28-48-108(d)(2). Here, the trial court made primarily factual and credibility determinations, and we do not reverse such a decision where it is not clearly erroneous. In these circumstances, and in light of the fact that Benton himself will bear one-third of the fee, we also perceive no abuse of discretion in the award of $24,000 in fees.

Affirmed.

ROBBINS and NEAL, JJ., agree.