2010 Ark. App. 393

**RaeEvelyn RICE, Appellant**

v.

**Eunita SEALS and Vicki McGhee, Appellees.**

**No. CA 09–844.**

Court of Appeals of Arkansas.

May 5, 2010.

RaeEvelyn Rice, pro se.

Jesse L. Kearney, Cross & Kearney, PLLC, Pine Bluff, for appellee.

KAREN R. BAKER, Judge.

This is a probate case in which one of the decedent's heirs appeals from an order authorizing the sale of real estate and another order confirming the sale and partially distributing the estate. We affirm both orders.

Victor Rice, aged eighty-six, died on April 12, 2006, survived by his three daughters, appellant RaeEvelyn Rice, appellee Eunita Rice Seals, and appellee Vicki Rice McGhee. After a hearing, the court appointed appellees co-administrators in May 2007 with appellant's consent. On January 7, 2008, appellant filed a petition to compel the co-administrators to file an inventory of the estate's assets. On February 22, 2008, appellees filed an inventory that included their father's homestead[1] in Pine Bluff, along with several parcels of farm land and city lots. They listed the total value of the real estate as $230,650; household goods and personal effects with a value of $3,500.00; some tools valued at $200.00; a checking account with Bank of America containing $2,304.31; a checking account at Simmons First National Bank containing $1,939.04; and fifty shares of stock valued at $1,250.00.

On April 15, 2008, appellant filed a petition to require appellees to file a "true and complete inventory and to render account and/or be removed." She stated that the inventory contained certain deficiencies, such as omitting real and personal property; listing inaccurate values; and including some items that the decedent did not own. Appellant stated that she had not been provided with any record of income to the estate or expenditures from its assets, and suggested wrongdoing by appellees.

On May 29, 2008, appellees filed a petition for authority to sell four parcels of farm land because there were outstanding claims against the estate. They stated that the property had been appraised and valued at $104,000; that an offer to purchase the property for $106,000 had been tendered; and that a private sale at that

---

1. Appellant lives in the homestead.

price, rather than a public auction, might be advantageous under present market conditions. Appellees asked the court to authorize the private sale of the real estate on those terms or to offer the land for public sale to the highest bidder. Appellees attached an "appraisement" valuing the parcels at $103,750 to the petition. This "appraisement" was signed by three individuals, and contained the following caveat: "This is a Broker's price opinion not an appraisal." Appellees also attached a letter from an attorney to the estate's counsel, which stated that his client "has authorized me to offer on his behalf $106,000 for the referenced acreage."

On June 13, 2008, appellant filed an objection to the sale, stating that appellees had not yet responded to her petition for a true and complete inventory and accounting, and that, "[b]arring breach of fiduciary duty or other foul play there should be sufficient cash assets in decedent's estate to cover any justly due claim(s) against the Estate without exhausting it." Appellant said that appellees had failed to state the amount or establish the validity of any outstanding claims against the estate, and that she was not interested in selling her interest in the property. After a hearing on July 16, 2008, the trial court ordered appellees to file another inventory within thirty days and a first accounting within sixty days.

On August 1, 2008, appellees filed a second petition for authority to sell the land at a private sale for $106,000. Appellant filed another objection to the proposed sale, asserting that the petition did not comply with Arkansas Code Annotated section 28–51–301(b) because it did not adequately set forth the terms of the contract for sale, and it did not describe the co-administrators' bond. She also alleged that it did not comply with subsection (a)(1)'s requirement that the property be appraised by three disinterested persons "who are well informed concerning the value of real property in the vicinity."

Appellees filed an amended inventory on September 15, 2008. It listed a value of $249,850 for the real estate; household goods ($3500); tools ($500); car ($500); Bank of America checking account ($21,-991.80); Simmons checking account ($6,261.11); corporate stock ($1,250); and Met Life stock ($1,927.50). Appellees filed an accounting on September 19, 2008, which reflected $14,650 rental income to the estate, and stated that the outstanding liabilities were the estate's attorney's fees and costs (which were undetermined); the co-administrators' fees (which were undetermined); and reimbursement to the co-administrators for their personal funds expended to maintain the estate's assets, pay real and personal property taxes, the decedent's last expenses, and claims against the estate (which were undetermined).

On September 29, 2008, the court entered an order, nunc pro tunc, denying the petition and finding that three parcels of real property in Altheimer and the income from rentals of the real property were not assets of the estate. It asked appellees to provide appellant with a report of rents and expenditures, as well as "a concise statement explaining the facts upon which the Inventory and Accounting are based" with supporting documents. The court stated that, if appellees filed a new or amended petition within thirty days, it could be decided upon the proof given at the July 16 hearing.

The court held another hearing on October 27, 2008, at which appellant voiced her objections to the sale. Appellee Seals testified that she had spent her own funds and the rental income maintaining the real estate; had purchased insurance; had brought the property "up to code"; had paid property taxes; and had maintained

the lawns. She said that appellant had refused to help, and that the rental income was not sufficient to pay for all of the necessary repairs and expenses. She also testified about the offer to purchase the property. On October 30, 2008, the court entered an order granting the petition to sell the property at a private sale within sixty days for at least the appraised value of $104,000, for cash, finding it in the best interest of the estate. Appellees filed a memorandum supporting the inventory and accounting on December 23, 2008. They included a detailed listing of expenses paid for the decedent's final medical bills and burial and for maintaining and repairing the real property.

Appellees filed a report of sale, stating that Maurice and his wife Emma Kelley had purchased the real property for $106,000, and filed a petition for authority to make a partial distribution of the estate's assets. They stated that the proceeds of the sale had been deposited with the clerk; that their attorney had asked for attorney's fees and costs of $4,817.57 (36.65 hours at $150.00 per hour, plus costs of $70.07, less a payment of $750.00); and that the co-administrators requested fees and costs. They asked that, after deducting those fees and expenses, the court distribute the remaining assets to the heirs. They also said that appellant was indebted to the estate for rent and for her share of the decedent's final expenses.

Appellant filed an objection to confirmation of the sale on April 2, 2009. She asserted that the sale of the real property was not necessary or in the best interest of the estate; that the petition for authority to sell did not set forth the terms of the contract or a description of the administrators' bond; that appellees had not had the property properly appraised before the sale, as required by Arkansas Code Annotated section 28–51–302; that appellees

had not properly accounted for the rental proceeds; that some of the property should have been rented; and that she was willing to accept the title to the homestead. Appellant also filed an objection to appellees' petition for distribution.

The court held another hearing on April 6, 2009. Appellee Seals testified that the sale had occurred, and that the proceeds had been deposited in an account at Pine Bluff National Bank. She asked the court to approve the sale. On cross-examination, appellant asked her about the income from the rental property. The court sustained the estate's objection to appellant's questions about the cost of preserving the estate's assets. Appellant again voiced her objection to the sale on the ground that it was not necessary. Stating that it could not preside over this case forever, the court asked appellees to petition for authority to "sell everything associated with this estate. That's the only way that you're going to get this matter settled."

The court entered an order confirming the sale and granting appellees' petition on April 6, 2009. It directed that $1,000 be paid to each appellee for prior expenditures for the decedent's funeral; that $4,817.57 be paid to the estate's attorney; that appellees retain $3,000 in the estate account; and that the balance of the account (which held the proceeds of the sale) be paid to the heirs. It denied appellees' request that appellant pay rent on the homestead.

On April 29, 2009, appellant filed a notice of appeal from the orders entered on October 27, 2008, and April 6, 2009. She raises five points on appeal, with several subpoints. Probate cases are reviewed de novo on appeal, and we will not reverse the trial court's findings of fact unless they are clearly erroneous. *Williams v. Hall*, 98 Ark.App. 90, 250 S.W.3d 581 (2007). We will not reverse a

trial court's confirmation of a judicially ordered sale if the trial court did not abuse its discretion. *Id.*

Appellant argues that the sale of the real property was not necessary because it produced sufficient income to cover the needs of the estate. Title to real estate of an intestate vests in his heirs at law upon his death, subject to the widow's dower and sale for payment of debts, preservation or protection of assets of the estate, the distribution of the estate or any other purpose in the best interest of the estate. *Doss v. Taylor,* 244 Ark. 252, 424 S.W.2d 541 (1968). In determining what property shall be sold for distribution of an estate or for any other purpose in the best interest of the estate of an intestate, there is no priority as between real and personal property and it is not necessary that one class of property be exhausted before resort is had to the other for these purposes. *Id.;* Ark.Code Ann. § 28–51–101 (Repl. 2004).

When real property has become an asset in the hands of an administrator or when the trial court finds it necessary for the preservation of the property, for protection of rights and interests of persons having interests therein or for the benefit of the estate, the personal representative may collect rents, pay taxes, make repairs, maintain and preserve the property, protect it by insurance and maintain or defend an action for possession or to determine or protect the title, until the property is sold or delivered to the distributees or until the estate is settled. *Doss v. Taylor, supra.* Arkansas Code Annotated section 28–51–103(a) (Repl.2004) provides:

> Real or personal property belonging to an estate may be sold, mortgaged, leased, or exchanged under court order when necessary for any of the following purposes:
>
> (1) For the payment of claims;

> (2) For the payment of a legacy given by the will of the decedent;
>
> (3) For the preservation or protection of assets of the estate;
>
> (4) For making distribution of the estate or any part thereof; or
>
> (5) For any other purpose in the best interest of the estate.

We hold that the trial court's decision to authorize the sale was more than adequately supported by appellee Seals's testimony at the October 2008 hearing.

Appellant also asserts that appellees' petition for authority to sell the real estate did not contain the terms of the contract or a description of their bond as required in Arkansas Code Annotated section 28–51–301(b) (Repl.2004), which states:

> The petition shall set forth the reasons for the application and describe the property or right or interest involved and the terms of the contract, conveyance, or transfer for which authority is sought and shall include a description of the bond of the personal representative and a statement of the facts essential to determine its sufficiency.

Appellant, however, waived the issue of the bond because she did not object to the trial court's statement in the order appointing appellees as co-administrators that no bond would be required. Because appellant has raised this issue for the first time on appeal, we do not address it. *See Simpson Housing Solutions, LLC v. Hernandez,* 2009 Ark. 480, 347 S.W.3d 1. Although the terms of the contract described in the petition could have been more specific, they were adequate. In any event, appellant has failed to demonstrate any prejudice in this regard.

Appellant further argues that appellees failed to comply with the statuto-

ry requirement that the property be appraised by three disinterested persons who were well-informed of the value of real property in the vicinity. Arkansas Code Annotated section 28–51–302 (Repl.2004) provides in relevant part: "(a)(1) Before a personal representative shall sell real property, he or she shall have it appraised by three (3) disinterested persons, selected by him or her, unless appointed by the court, who are well informed concerning the value of real property in the vicinity." The failure of an administrator to have land appraised before selling it does not render the sale void. *Bell v. Green,* 38 Ark. 78 (1881). In *Apel v. Kelsey,* 47 Ark. 413, 2 S.W. 102 (1886), the supreme court stated that an administrator's failure to have land viewed and appraised by three disinterested householders in that county or to advertise the sale were mere irregularities cured by the confirmation of sale. In fact, confirmation of the sale cures all errors not jurisdictional or clearly violative of some fundamental right secured through the provisions of the probate code. *Hamilton v. Northwest Land Co.,* 223 Ark. 831, 268 S.W.2d 877 (1954). The appellate court will follow the "better public policy of sustaining judicially-directed sales unless imperative reasons are shown for avoidance." 223 Ark. at 837, 268 S.W.2d at 881. This policy is consistent with our often-stated rule that error is no longer presumed to be prejudicial; unless the appellant demonstrates prejudice, we will not reverse. *McWilliams v. Schmidt,* 76 Ark. App. 173, 61 S.W.3d 898 (2001). Although appellees did not strictly conform to the statute's requirements about the appraisals, appellant has presented no evidence of how the lack of three appraisals, rather than an "appraisement" by three brokers, actually prejudiced her. Thus, we do not reverse on this issue.

Appellant also contends that the trial court erred in limiting her time to present her objections at the October 27, 2008 hearing. A trial court has broad discretion in fulfilling its requirement to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect the witnesses from harassment or undue embarrassment." Ark. R. Evid. 611(a) (2009). We will only reverse the trial court on such matters if it has abused its discretion. *Hanna v. Hanna,* 2010 Ark.App. 58, 377 S.W.3d 275. Given the number of lengthy written objections filed by appellant, in addition to her appearances at the hearings, she was afforded more than sufficient opportunity to make her position clear.

Additionally, appellant argues that the trial court violated her constitutional right to due process by limiting her time to present her case. We disagree. Due process requires that one be given a meaningful opportunity for a hearing, appropriate to the nature of the case and preceded by notice, before he is deprived of any significant property interest, except where some valid, overriding state interest justifies postponing the hearing until after the event. *Williams v. Hall, supra.* The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Id.* The concept of due process requires neither an inflexible procedure universally applicable to every situation nor a technical concept with a fixed content unrelated to time, place, and circumstance. *Id.* What process must be afforded is determined by context, dependent upon the nature of the matter or interest involved. *Id.* The October 2008 hearing was held almost five months after appellees filed their petition.

During that interval, appellant filed her written objections and attended the July 2008 hearing. We hold that she received all of the process that she was due.

Appellant also complains about the leading questions that appellees' counsel asked of appellee Seals on direct examination at both hearings. Because appellant has raised this issue for the first time on appeal, we do not address it. *See Simpson Housing Solutions, LLC v. Hernandez*, 2009 Ark. 480, 347 S.W.3d 1. Without citation to authority, appellant also contends that the trial court abused its discretion in ordering appellees to retain $3,000 in the estate account. We will not address arguments if they are insufficiently developed and lack citation to authority. *Id.*

Appellant further asserts that the trial court abused its discretion in ordering her to pay any portion of the estate's attorney's fees. She argues that it was not necessary for the estate to hire an attorney; that his representation was inadequate; and that his request for fees was not supported by documentation. Unless otherwise contracted with the personal representative, heirs, or beneficiaries of an estate, compensation for an attorney who performs legal services for the estate is governed by Arkansas Code Annotated section 28–48–108(d)(2) (Supp.2009), based on the total market value of the real and personal property reportable. However, under subsection (d)(3), the court can determine that the schedule of fees is either excessive or insufficient under the circumstances and allow the attorney a fee commensurate with the value of the legal services provided. While there is no fixed formula in determining the excessiveness or insufficiency of attorney's fees, courts should be guided by certain recognized factors including the following: the experience and ability of the attorney; the time and labor required to properly perform the legal services; the amount involved in the case and the results obtained; the novelty and difficulty of the issues; the customary fees for similar legal services in the locality; whether the fee is fixed or contingent; the time limitations imposed by the client; and the likelihood, if apparent to the client, that the employment will preclude other employment by the lawyer. *Rollins v. Rollins*, 94 Ark.App. 65, 224 S.W.3d 554 (2005). The reviewing court will usually defer to the superior perspective of the trial court in assessing the applicable factors. *Id.* The value of attorney's fees rendered to an estate is primarily a factual determination to be made by the trial court, and we will not reverse its decision where it is not clearly erroneous. *Id.* A fee award for services rendered to an estate is a matter within the discretion of the trial court, and we will not reverse in the absence of an abuse of discretion. *Morris v. Cullipher*, 306 Ark. 646, 816 S.W.2d 878 (1991); *Rollins v. Rollins, supra.* In light of appellant's consistent opposition to almost every act appellees took or asked permission to take, we cannot say that the trial court abused its discretion in awarding attorney's fees to the estate.

Appellant ends her brief by claiming that the trial court abused its discretion in directing appellees to take the steps necessary to close the estate. The essence of appellant's impassioned argument in this point is that the trial court should let this proceeding remain on the probate docket indefinitely while the parties resolve their problems. In light of the fact that Mr. Rice died four years ago, this argument is utterly without merit.

Affirmed.

PITTMAN and HART, JJ., agree.