2012 Ark. App. 177

**Robert O. SHAFER, Jr., Appellant**

v.

**ESTATE OF Robert O. SHAFER, Sr., Appellee.**

No. CA 11–810.

Court of Appeals of Arkansas.

Feb. 22, 2012.

Cecilia Leona Rose Ashcraft, Malvern, for appellant.

Lee Albert Biggs III, Searcy, for appellee.

WAYMOND M. BROWN, Judge.

This is the third appeal in the probate of this estate. Robert O. Shafer, Sr., died testate on May 26, 2007, leaving his children, Robert Shafer, Jr., Karl Shafer, and Roberta Payne, as heirs. Appellant Robert Shafer, Jr. appeals from the circuit court's orders finding him in contempt, imposing sanctions against him, and awarding fees to the personal representative and the estate's attorney. We find no error and affirm.

Mr. Shafer's children were unable to agree about the disposition of the estate's property. On August 14, 2007, with assistance from the White County Sheriff's Department, Karl delivered to appellant a flatbed trailer loaded with property that had belonged to their father. The sheriff's report stated:

> On the above date and time I was advised to meet with the complainant at

the Fairview Fire Dept. in reference to an escort to return property. Upon arrival, I met with the complainant, Mr. Karl Shafer, who advised me that his brother Robert Shafer, who is listed as the suspect, had stored some items willed to him by their father on his property and that it had been there for some time. Mr. Shafer told me that he had advised his brother Robert to remove the items which he has refused to do. On today's date, Mr. Shafer took several items consisting of flatbed trailer, spray tank, two plows, one front end loader, one mower, and one breaking plow back to his brother, Robert Shafer's residence and left them there. Mr. Shafer attempted to contact his brother at the residence but had no success. Mr. Shafer requested a [sic] information report be taken in case there were any further problems.

Although their father's will nominated appellant and Karl as co-executors, the extreme family discord, primarily caused by appellant, resulted in the circuit court's appointment of Robert Hudgins, an attorney and certified public accountant, to serve as the executor in June 2008. In a July 23, 2008 letter to Hudgins, appellant's attorney stated that the trailer Karl had brought to appellant's residence might be an asset of the estate. On August 1, 2008, Hudgins sent a letter to appellant's attorney stating that the estate considered the trailer and its contents to be assets of the estate. In an August 11, 2008 letter to Hudgins, appellant's attorney acknowledged that the trailer and plow belonged to the estate but said that appellant claimed the breaking plow and another plow.

On October 3, 2008, Hudgins filed an inventory of the estate that included a "1960 utility trailer" and a "1997 16 ft. utility trailer flatbed light-duty AR-KAVTL9570245950." At the conclusion of the hearing held on November 18, 2008, to address issues about the estate's property (at which Hudgins, Karl, Roberta, Karl Shafer, Jr., and appellant testified), the court stated:

I'm going to say this one time and I hope everybody listens real close. If Mr. Hudgins and Mr. Biggs [the estate's attorney] report back to me they're having trouble with anybody on anything from this date forward, you better bring your toothbrush because you're going to jail for a while because we're not going to listen to this mess any more. I have the same sentiment that the young fellow [Karl, Jr.] that sat up here that talked about family and how this is ridiculous. This is ridiculous. You're arguing over lots of little things that y'all should have decided. You're asking me to decide. I have to follow the law. This isn't going to be the best way to divide things up, but since I have to do it, this is the only way I know how to do it.

Everything in the inventory that was filed October 3rd is estate property and will be sold at auction. We'd like to do it within 60 days if possible....

. . . .

I expect that if any of the heirs have any of this property that I've identified as property of the estate in their possession, they need to get that to Mr. Hudgins within ten days or he'll tell you where to deliver it within ten days.

We'll have a sale. After the sale, the proper debts of the estate will be paid, then the balance will be divided among the heirs. At this sale I expect no arguments from any of the heirs, nothing but cooperation at that sale, and you have the opportunity if you want to bid at the sale just like anyone else.

On February 17, 2009, the circuit court held another hearing and entered an order finding that all items listed in the inventory were property of the estate and directing that "[a]ll estate property in the possession or under the control of the decedent's three children" must be delivered to Hudgins. On February 18, 2009, appellant delivered a utility trailer with the ARKAVTL9570245950 serial number to the auctioneer; that trailer, however, was not the sixteen-foot utility trailer with the plows on it that had been discussed at the November 2008 hearing. Hudgins's attempts to obtain the trailer from appellant were unsuccessful.

Property of the estate was sold at public auction on February 21, 2009. The sale of the personal property netted $9713.53; the real estate was sold for $59,000. In the report of sale, Hudgins alleged that appellant had refused his demands to deliver the 1997 sixteen-foot utility trailer (shown in a photo) as ordered, and asked that appellant be held in contempt. The circuit court confirmed the sale on March 20, 2009, and heard the contempt motion on June 24, 2009. Appellant and Hudgins testified at that hearing.

At the end of the hearing, the court stated:

So what we're left with is the trailer and the rings. The trailer and rings need to be turned over to Mr. Hudgins within ten days.

Mr. Hudgins, you'll have to, through Mr. Biggs and Mr. Carder [appellant's lawyer], make arrangements on where to put that trailer, and then we're going to have to sell it along with the rings. That will be done at the courthouse steps. Either party, any of the parties can advertise, or whatever they choose fit to, for the sale, but it will be held 45 days from today.

. . . .

From a review of the file and the testimony that I've heard today, this estate was opened in, looks like 2008, the early part of that year. This thing should have been wrapped up at the end of, no later than the end of 2008. Now we're almost halfway through the year 2009, which is totally, I would say ridiculous. There's no sense in this.

And on this motion for contempt against Robert O. Shafer, Jr., from reviewing the testimony I think that Mr. Shafer has failed to act in good faith. I think that he has caused numerous delays in this. I don't think that—I think he's let his emotions come into play, and I think he's the greatest cause of this, so I'm going to find Mr. Shafer in contempt for failure to cooperate with the estate, and I'm going to assess him the costs and attorneys' fees for today. I'm going to have to have Mr. Biggs to prepare a petition and itemize that out and serve Mr. Carder with that, and if there's any objections as to what's included in that petition, we'll have a short hearing to determine what's reasonable for the fees and expenses, and that should include . . . Roberta Payne's expense for driving up here and driving back [from Mobile, Alabama].

In an order dated October 23, 2009, the circuit court found appellant in contempt and ordered him to deliver the "sixteen foot long trailer, two Masonic rings and one of the plows currently on the trailer [at appellant's choice]" to Hudgins within ten days. In terms of sanctions, the order provided:

The court hereby assesses the costs and attorney's fees against Robert O. Shafer, Jr. relating to this June 24, 2009 hearing. Mr. Biggs should prepare and submit a petition to the court, copied to Mr. Carder, setting out the itemized fees and expenses of the personal repre-

sentative and the attorney for the estate associated with the June 24, 2009 hearing, and said petition should include the expenses of Roberta Payne for her travel to and from said hearing from her home in Mobile, Alabama.

Appellant appealed this order.[1] On June 2, 2010, this court dismissed that appeal because the circuit court had not yet imposed the sanctions for appellant's contempt and the order was not final.[2]

On February 25, 2011, Hudgins filed a petition for fees for himself and Biggs and for Roberta's travel expenses. He sought approval of fees for himself of $18,252.17, with an attached statement detailing his services. Giving credit for payments received, he listed a balance due of $11,842.00. Hudgins used an asterisk to indicate the costs and fees relating to the June 24, 2009 contempt hearing ($7375.00 for himself; $8120.11 for the estate's attorney; and $795.15 for Roberta). In his petition, Hudgins listed numerous examples of appellant's frivolous and obstructive actions that increased the cost of administering the estate from an expected $6000 or $8000 to over $38,000. Biggs's detailed statement was also attached to the petition; the total was $19,748.27, and the charges attributable to the June 24, 2009 contempt hearing were indicated with asterisks. Hudgins also attached copies of Roberta's receipts from three restaurants, a grocery store, and Walmart for expenses incurred in attending the June 24, 2009 hearing. The Walmart receipts, in the amounts of $19.31 and $12.60, were described as "Thank you gifts for letting me stay with Karl and Vonda Shafer." Roberta also sought $632.91 for mileage at the IRS's standard rate. In response, appellant argued that the fees sought by Hudgins and Biggs were duplicative, excessive, and unjustified. He asserted: "Neither the value of the estate nor the nature of the matters for which the estate was called to defend against was so complex or sophisticated that the services of two attorneys would be prudent or justified." He also argued that the requested fees were out of line with Arkansas Code Annotated section 28–48–108.

The circuit court held a hearing on April 1, 2011, to address the request for fees, at which Hudgins and Karl testified. Addressing appellant's new counsel, the court stated:

[W]hile the arguments you make are very good arguments, some of it really doesn't, isn't applicable to this case. I mean there were, there was an executor and personal representative appointed and in normal circumstances I agree, that's duplicative of expenses, it causes for a lot higher bill than needs to be assessed, but in this case your client did nothing to cooperate with this Court at any step. Never. You can even read the appeal. I'm sure you have. In the opinion of the Court of Appeals they were as flabbergasted as I was in the claims that he was making. There was no merit whatsoever.

Normally, these type of things, estates, definitely less than $10,000.00 in

---

1. On December 9, 2009, Hudgins filed a petition for contempt, alleging that appellant had delivered the trailer but not the plow. The circuit court stated that appellant was "playing games" with the court; found him in contempt again; and ordered him to pay the estate $2500 in fees and expenses. Appellant appealed that order, complaining that the earlier order was not definite in its terms as to which plow he was to deliver. This court affirmed, finding the order to be "crystal clear in its directive." *Shafer v. Estate of Shafer*, 2010 Ark. App. 743, at 6, 2010 WL 4345689.

2. *Shafer v. Estate of Shafer*, 2010 Ark. App. 476, 2010 WL 2195997.

fees would be reasonable, but this isn't your normal case. I don't think it would be fair to, at this juncture to assess your client expenses and costs they incurred after the June 29 date for this hearing because that's not what the order said. That's not to say that at a subsequent hearing if the personal representative or the other heirs feel like he should be responsible for the attorneys' fees that were incurred after that date, that they could ask and that would be set for another hearing and you would be given an opportunity [7]to find out what they're requesting and do your discovery, and that would only be the fair thing to do.

So, with that said, I find that the personal representative and the attorney of the estate fees are reasonable in light of the circumstances, that Roberta Payne is entitled to every nickel of that $795.15, and I think I promised her that this thing would be closed before she dies,[3] and that is my goal, is to do that.

On June 15, 2011, the circuit court entered an order finding the fees and expenses claimed by the personal representative and attorney for the estate, as well as those (through June 24, 2009) marked as related to the June 24, 2009 hearing, to be "reasonable in light of the circumstances" and approved them. It also approved reimbursement to Roberta for $795.15. The court assessed and entered judgment of $15,560.42 against appellant ($6990.00 for Hudgins, $7775.27 for Biggs, and $795.15 for Roberta) relating to the June 24, 2009 hearing. Appellant filed a timely notice of appeal.

In his first point, appellant asserts that the trial court erred in finding him in contempt because the order was not definite in its terms and he did not willfully disobey it. He notes that the serial number listed with the sixteen-foot trailer on the inventory actually went with a different trailer (for a four-wheeler) in his possession. Appellant, in fact, contends that Hudgins did not even list the trailer on the inventory. He also states that Karl had represented to the sheriff's office that the trailer belonged to appellant when Karl took it to appellant's residence in August 2007.

We review probate cases de novo on appeal and will not reverse the probate court's [8]findings of fact unless they are clearly erroneous.[4] The willful disobedience of a valid court order is contemptuous behavior.[5] However, before one can be held in contempt for violating a court's order, the order must be definite in its terms, clear as to what duties it imposes, and express in its commands.[6] As a general rule, judgments are construed like any other instruments; the determinative factor is the intention of the court, as gathered from the judgment itself and the record.[7] Contempt is divided into criminal contempt and civil contempt.[8] Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders.[9] Civil contempt protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private par-

3. Payne was very ill.

4. *Williams v. Hall*, 98 Ark.App. 90, 250 S.W.3d 581 (2007).

5. *Shafer v. Estate of Shafer*, 2010 Ark. App. 743, at 4, 2010 WL 4345689.

6. *Id.*

7. *Id.* at 5.

8. *Id.*

9. *Id.*

ties.[10] The focus is on the character of the relief rather than the nature of the proceeding.[11] A contempt fine for willful disobedience that is payable to the complainant is remedial and therefore constitutes a fine for civil contempt.[12] However, if the fine is payable to the court, it is punitive and constitutes a fine for criminal contempt.[13] We will not reverse a circuit court's finding of civil contempt unless that finding is clearly against the preponderance of the evidence.[14] Here, the court ordered appellant to pay the estate's expenses and attorney's fees, and Roberta Payne's travel expenses, incurred as a result of appellant's behavior. Being remedial in nature and payable to the complainants, it was civil contempt.[15]

We find appellant's argument unpersuasive. One cannot reasonably interpret the sheriff's report in the manner urged by appellant. Although it is true that Hudgins acknowledged his (and the others') confusion about the serial number, appellant did not claim that the trailer was not an asset of the estate at the November 2008 hearing. There has never been any doubt that Hudgins included that particular sixteen-foot utility trailer, regardless of its actual serial number, in the inventory; that appellant and his erstwhile attorney conceded that this trailer was part of the estate; that the court expressly found that everything listed on the inventory was an asset of the estate; and that the heirs were ordered to deliver all estate property (it was undisputed that the estate property included this trailer) to Hudgins in preparation for the sale. Additionally, Hudgins testified that he had faxed a letter to appellant's attorney on February 19, 2009, stating that appellant still had a trailer that was an asset of the estate; that he wanted it; and that appellant should deliver it to him or face incarceration. Appellant knew all along that Hudgins wanted him to turn this particular trailer over to the estate. The circuit court's finding of contempt was not clearly against a preponderance of the evidence, and we affirm on this point.

In his second point, appellant argues that the fees awarded to the personal representative and the estate's attorney are excessive and not authorized by Arkansas Code Annotated section 28–48–108 because they are not commensurate with the value of the estate; no complex issues were involved and no extraordinary skill was required; the fees were duplicative; and there was no need for Hudgins to earn an attorney's rate for his services. Appellant correctly points out that Hudgins did not set forth the actual amount of time (and hourly rate) that he spent on any task and that Hudgins's statutory fees would have been much less than the actual award. It is also apparent that Hudgins and Biggs charged for performing some services, such as reviewing files with appellant, contemporaneously.

The compensation to the personal representative is governed by Arkansas Code Annotated section 28–48–108(a) (Supp. 2011), which calculates such fees based on a percentage of the personal property passing through the hands of the personal representative. Subsection (b) of the statute allows the probate court to award an additional fee if the personal representative performs such duties with respect to

10. *Id.*

11. *Id.*

12. *Id.*

13. *Id.*

14. *Id.*

15. *Id.*

the decedent's real property, "taking into consideration the nature and extent of the services, the extent and value of the real property, and other relevant circumstances."

Unless otherwise contracted with the personal representative, heirs, or beneficiaries of an estate, compensation for an attorney who performs legal services for the estate is governed by Arkansas Code Annotated section 28–48–108(d)(2) (Supp.2011), based on the total market value of the real and personal property reportable. However, under subsection (d)(3), the court can determine that the schedule of fees can be either excessive or insufficient under the circumstances and allow the attorney a fee commensurate with the value of the legal services rendered. While there is no fixed formula in determining the excessiveness or insufficiency of attorney's fees, courts should be guided by certain recognized factors including the following: the experience and ability of the attorney; the time and labor required to properly perform the legal services; the amount involved in the case and the results obtained; the novelty and difficulty of the issues; the customary fees for similar legal services in the locality; whether the fee is fixed or contingent; the time limitations imposed by the client; and the likelihood, if apparent to the client, that the employment will preclude other employment by the lawyer.[16] The reviewing court will usually defer to the superior perspective of the trial court in assessing the applicable factors.[17] The value of attorney's fees rendered to an estate is primarily a factual determination to be made by the probate court, and the appellate court will not reverse its decision where it is not clearly erroneous.[18] A fee award for services rendered to an estate is a matter within the discretion of the trial court, and the appellate court will not reverse in the absence of an abuse of discretion.[19]

In this case, the value of the estate is not an accurate measure of the work that was required of the personal representative and the estate's attorney. As the circuit court explained, it appointed Hudgins, rather than a local bank, as personal representative because of the conflict. Biggs's statement set forth, in detail, the work required to address appellant's seemingly endless actions that delayed this proceeding and prevented an orderly distribution of this estate. Appellant filed numerous, unfounded motions and consistently opposed the actions taken by Hudgins and the other heirs. A year passed before Karl filed his petition for appointment of a personal representative, after it became clear that appellant would not cooperate with the other heirs. This May, it will have been five years since Mr. Shafer died. Since Mr. Shafer's death, appellant has accused Karl of stealing; removed property without authorization, including all of the family photographs previously sorted and divided by the heirs, telling them "nobody tells me what to do"; added disputed property to his father's personal property assessment; willfully refused to turn over estate property to the personal representative; been found in contempt and fined on two occasions; and pursued two appeals before this one. The three

---

**16.** *Rice v. Seals,* 2010 Ark. App. 393, 377 S.W.3d 416.

**17.** *Id.*

**18.** *Id.*

**19.** *Id.; accord Nabers v. Estate of Setser,* 310 Ark. 194, 833 S.W.2d 375 (1992); *Morris v. Cullipher,* 306 Ark. 646, 816 S.W.2d 878 (1991); *Hooten v. Mobley Law Firm, P.A.,* 2011 Ark. App. 778, 387 S.W.3d 298; *Rollins v. Rollins,* 94 Ark.App. 65, 224 S.W.3d 554 (2005).

appellate records contain over 1040 pages. Appellant filed motions for clarification, for reconsideration, for extensive discovery, and to remove the personal representative, prompting Biggs to file a motion for Rule 11 sanctions against appellant and his attorney. The circuit court has been forced to conduct numerous hearings. Hudgins, who coordinated a judicial sale of the real and personal property while struggling with appellant's behavior, testified about the necessity of their services, the lack of duplication, and the huge role that appellant played in delaying the closing of this estate, which the court clearly believed. In light of appellant's behavior, we cannot say that the trial court abused its discretion in making the awards to Biggs and Hudgins.

In his last point, appellant contends that the trial court's assessment of a portion of Biggs's and Hudgins's fees, as well as Roberta's travel expenses, associated with the contempt hearing was unreasonable, excessive, and an abuse of discretion. He makes the same arguments as he did in the previous points, and asserts that the trial court held him in "disdain" and was biased against him. The same considerations, discussed above, that support the contempt finding and the general awards of fees to Hudgins and Biggs are also relevant to this point. Although it is apparent that the trial court was very displeased with appellant's obstructive behavior, we see no evidence of bias. At the April 1, 2011 hearing, Hudgins testified, which the trial court obviously credited, that he and Biggs had scrutinized their billing records as best they could to pinpoint only the work that related to the contempt issue, placing asterisks by those entries on the bills. We also disagree with appellant's contention that Roberta's travel expenses were unreasonable, including the inexpensive "thank you" gifts she pur-chased at Walmart for Karl's letting her stay at his home. In light of appellant's obstinate behavior, the trial court did not abuse its discretion in assessing these fees and entering judgment against him.

Affirmed.

HART and HOOFMAN, JJ., agree.